CASE No. 1067.

VERDIER v. PORT ROYAL RAILROAD COMPANY.

1  A railroad company constructed its road-bed over lands acquired by the United States, under the provisions of the direct tax act of 1863, (12 *U. S. Stat.* 422,) without objection by the government, or claim to a right of notice or demand for the appointment of commissioners to assess compensation; after five years' use by the railroad company the United States sold this land by metes and bounds, without reservation of the road-bed, to V., who had knowledge of its possession and use by the railroad company. V. afterwards brought action for the recovery of the strip of this

land used by the railroad company, and for damages, and proved his title-deed from the United States. *Held*, that V. was properly nonsuited.

2. A party who has never been in the possession of land, for the recovery of which he brings his action, can recover only upon the strength of his own title.

3. This land, while owned by the United States, was *public land*, within the meaning of the act of 1866, (*U. S. Rev. Stat.*, ? 2477,) which provides that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."

4. *Quere:* Did not the United States recognize this statute as operating as a grant, and in the sale of this land did they intend to convey a right to disturb the railroad company in the use of their road-bed?

5. *Quere:* If the United States were a *private owner*, and this railroad was constructed without objection, would a subsequent purchaser with notice, have the right to demand compensation from the company for their use of the road-bed?

6. Under Chapter LXIII., Section 83 of General Statutes, permission to a railroad corporation to enter upon the construction of their highway without previous compensation, may be given by the owner without receiving the notice prescribed in Section 75; and under the circumstances of this case, such permission will be presumed, and the United States and their vendee estopped from afterwards denying it.

---

Before THOMSON, J., Beaufort, November, 1880.

This action was commenced February 5th, 1878, by William J. Verdier, against the defendant corporation, for the recovery of real property, and damages for its detention. The opinion states the case as fully as does the brief. No grounds of appeal are given.

*Messrs. W. J. Verdier* and *J. D. Pope*, for appellants.

*Mr. William Elliott*, contra.

July 27th, 1881. The opinion of the court was delivered by McGOWAN, A. J. This action was brought to recover possession of a strip of land used by defendant corporation as a road-bed in operating their railroad. In 1857 the Port Royal Railroad Company was chartered by the state "for the purpose of establishing a communication by railroad from the waters of

Port Royal harbor, in the neighborhood of Beaufort, to some point on the Savannah river." 12 *Stat.* 564. The charter was afterwards amended, and the time for the completion of the road extended.

It does not appear who owned the strip of land prior to 1863, but it is conceded that it had been previously granted, and had been the private property of some one, and about that time the title became vested in the United States government under the operation of the direct tax acts of congress, passed during the war. 12 *U. S. Stat.* 422.

While the land was owned by the United States government, sometime in 1870, the defendant corporation entered upon the land and took possession of so much thereof as was necessary and had been authorized by the charter, to lay the track of their railroad. They finished their road over it in 1871, and are still in possession, using it as their tract, and claim that as against the plaintiff, certainly they have acquired the right of way therein.

In 1876, the defendants being in possession and operating their road over said strip, the plaintiff, with knowledge of that fact, received a conveyance from the United States government of the tract of land through which it runs, and claiming that his deed gave him title to all the land within its limits, commenced this action February 5th, 1878, to recover the same from the defendant corporation. The case was tried before Judge Thomson, who, without assigning any reason therefor, granted a non-suit. The plaintiff filed no specific exceptions to the order of non-suit, but appeals generally therefrom to this court.

The only question is whether the non-suit was improperly granted. Being an action for a strip of land, of which the plaintiff never had actual possession, nor was evicted therefrom, he must recover it, if at all, upon the strength of his own title, and not the weakness of that of the defendant. He must show complete chain of title back to the original grantor, or possession long enough to presume a grant or give title, or that plaintiff and defendant claim from a common source, and that his title is better than that of defendant. In proving his case the plaintiff did not go back of the conveyance of the government to himself, and, therefore, he failed to show perfect title in

himself either by chain to the original grantee or by possession for a period long enough to give title.

The only question then remaining is whether it appeared that the defendant as well as the plaintiff claimed under the government, and that plaintiff's claim was better than that of defendant. Upon this issue the *onus* was upon the plaintiff, and, until the necessary proof was made, it was not incumbent upon the company to do more than stand upon their possession. If that were obtained in any other manner than from the government, the principle indicated was not applicable to the case, and in order to recover it was necessary for the plaintiff to prove title in himself. It does not seem to be perfectly clear that the company entered under the government. It is certain that no written connection was shown, and, from all that appears, it is possible that the company claimed in some way other than from the government.

But, as the company built and located their road in 1870, while the government owned the land, let us assume that this fact created such a relation between them and the government as to authorize the application of the rule in regard to tracing title to a common source, and inquire how the matter stands in that aspect. The plaintiff insists that he purchased land and received a conveyance with certain metes and bounds, which include the strip sued for, and that his title to that is as good as to any other portion of the land ; that the right of way in the land was never acquired by the company, which could be done only by condemnation of the land according to law, or by the assent, expressed or implied, of the owner. The plaintiff received conveyance in 1876, from the United States government. There is no copy in " the case," and we are not informed of its precise terms, or whether it makes any reference to the fact of the railroad running through the land conveyed ; but we assume that it was a quit-claim deed or grant in the usual form, conveying lands by metes and bounds, which include the slip in controversy, and we take it as clear that the plaintiff can have no higher right than his vendor had at the time of the conveyance.

If the land through which the track runs had not been conveyed to the plaintiff, could the government in an action recover

this tract from the company? If not, the plaintiff, holding under the government, cannot. There was no evidence that the land had been condemned in the manner prescribed by law, or that the government had executed a formal release of the right of way, but it does appear that while the government owned the land the public authorities of the government granted to the company the right of way under the operation of the general statutes of congress, passed in 1866, which was operative in 1871, when the track of the railroad was located, and declares that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." *U. S. Rev. Stat., p.* 456, § 2477.

It is insisted, however, that this land was not "public" in the sense of the act of congress, and that the general grant of the right of way in "public lands" did not include this case. It is true that these lands, having been previously granted and owned as private property, were not original public lands like those unsettled in the new states and territories, but we suppose that after the United States acquired the title they were held for the benefit of all the citizens of the government, and were "public lands" in the sense of the act of congress. If so, as they were sold to the plaintiff, we may safely assume that they were not "reserved for public uses," and fell under the operation of the act of congress. That the government acknowledged the force of the grant as applicable, would seem to be indicated by the fact that no objection was made to the location of the road and the use of the road-bed for years—indeed, up to the time of the sale to the plaintiff, it does not appear that the government ever objected. It seems from the statutes that it is the practice of the United States to make grants of land to promote public enterprises, and especially the building of railroads; and it may be that the authorities regarded the right of way in this land as already granted to the company before they sold, and that they did not convey or intend to convey to the plaintiff the right to disturb the company in the enjoyment of it.

If we are mistaken in this, and the government should only be regarded as *a private owner* of the land, does it follow that the plaintiff should recover possession of this road-bed? The ques-

tion is not whether the plaintiff, leaving the company in possession of its track, can recover compensation for its use as a right of way, but whether, disregarding all that has been done and the long possession of the company, he may recover the land itself and thus break the track, and to that extent destroy the public usefulness of the road.

The state, by the right of eminent domain, granted to the company the power to take any lands lying in their route, upon only one fundamental condition, viz., that the value of the land so taken should be paid to the owner, if required ; for want of an agreement, or where parties would not negotiate, the value to be fixed by commissioners. In any event, however, with or without consent, the company was authorized to take as much as was necessary for a right of way. True, this could be done only in the manner prescribed by law, or with the assent, express or implied, of the owner, and the plaintiff claims that the right of way was not condemned in the manner prescribed, and that the company are as much trespassers as if they never had a charter. If this were true, we suppose that the company would still have the right, under their charter, to re-take the land and have it valued under the act; so that, at last, even upon the view of the plaintiff, the only substantial right really involved is that of *compensation for the use of the land;* and in such case it has been held, under circumstances somewhat analogous, that that right belongs only to the owner of the land at the time of the construction of the road and cannot be pursued by a subsequent purchaser with notice, whose rights only commence at the date of his deed, and who takes the land in the condition in which he purchased it. *Lewis* v. *R. R. Co.,* 11 *Rich.* 91.

The act of 1868 (*Gen. Stat.* 352), prescribes " the manner of acquiring rights of way " in cases of individual ownership. *McCrea* v. *Port Royal R. R. Co.,* 3 *S. C.* 381. One of the sections of that act provides that any person or corporation, before entering upon any lands for the purpose of construction, shall give to the owner thereof (if he be *sui juris*) notice in writing that the right of way over said lands is required for such purpose; which notice shall be given at least thirty days before entering upon said lands; and if such notice shall be given and

2 H

the owner shall not, within the period of thirty days, signify in writing his refusal or consent, *it shall be presumed that such consent is given.* If the owner of said lands shall signify his refusal of consent to entry upon his lands without previous compensation, the person or corporation requiring such right of way shall apply, by petition, for empaneling a jury to ascertain the amount which shall be paid as just compensation for the right of way, &c. And then Section 83 is as follows: "Nothing herein contained shall be construed to prevent entry upon any lands for purposes of survey and location; *and if, in any case, the owner of any lands shall permit the person or corporation requiring a right of way over the same to enter upon the construction of the highway without previous compensation,* the said owner shall have the right, *after* the highway shall have been constructed, to demand compensation and to petition for an assessment of the same in the manner hereinbefore described; provided, such petition shall be filed within twelve months after the highway shall have been completed through his or her lands."

It is insisted that under these provisions there could be no "permission" to enter upon the construction of the highway before the owner had received the notice required by a previous section; that such notice must be the first essential step to set up the easement, and, in fact, a condition precedent to securing any rights whatever under the act by *permission, possession, consent or otherwise.* The requirement as to notice was made manifestly with a view to formal proceedings to assess the value in case of refusal, but surely it was never intended that the owner could not give the "permission" without first receiving formal notice, without which the right to object remained in abeyance indefinitely. The notice was intended for the benefit of the company in cases of objection, to give them a starting point to condemn the lands, but was unnecessary in cases of consent. As the owner could give "permission" without receiving previous notice, it might be inferred from facts and circumstances. There was no express proof that the company gave the government "notice in writing" that the right of way was required; but the company are supposed to have known of the act of congress, (*supra*), and there was proof that they, as early as 1870, entered

publicly upon the lands, located and built their road, and continued in possession of it as part of their road-bed until 1876, when the land through which it ran was conveyed to plaintiff. During the whole of this time the authorities of the government acquiesced in such entry and use without objection, or claiming that they had no notice in writing, or asking the appointment of commissioners to assess the value.

Whether, as matter of fact, this was enough " to presume " that the notice was given, or that regular release of right of way was executed, it was at least evidence that the government-" permitted the corporation to enter upon the construction of the highway without previous compensation." The government, considered merely as an individual proprietor, had the right, with or without written notice, to require compensation. The manner of proceeding was open to the authorities of the government as well as to others, and upon the assumption that such right was not granted or waived, it was their duty to speak and warn the company ; but they stood by in silence for six years and allowed the company to incur expense in locating and building this road through these public lands. We think, as matter of law, the government would now be estopped from denying this permission, this executed license, and from recovering the lands, and, as a consequence, the plaintiff, who holds the title of the government, is also estopped. " He who can forbid and does not, is deemed to have assented.   *   *   *   If one having title to land looks on and suffers another to purchase and expend money on the land without making known his claim, he will not be permitted, afterwards, to assert his title against an innocent purchaser." *Herman's Law of Estoppel,* § 409.

In *Hand* v. *R. R. Co.,* 12 *S. C.* 351, this court said: " If a party having title to property, or a right in respect thereof, permits another to exercise authority over such property, or deal with such right, the latter shall not be subjected to damages by reason thereof, for *volenti non fit injuria.* This is a well-known legal principle, and, under its operation, a license to use both real and personal property is recognized as existing at law, both by deed and other writing under seal and by parol, and is also

presumed from the conduct and relationship of the parties when not in terms expressed."

This judgment is without prejudice to any right which the plaintiff may be advised that he has to institute proceedings under the act for *compensation* for the use of the right of way. No opinion is intended to be intimated upon that subject.

The judgment of this court is, that the judgment of the Circuit Court be affirmed and the appeal dismissed.

SIMPSON, C. J., and McIVER, A. J., concurred.