## RANKIN v. SIEVERN & KNOXVILLE R. R. CO.

1. A DEMURRER does not admit conclusions of law, or characterizations of fact previously alleged.
2. PLEADINGS—TRESPASS—REAL PROPERTY—RAILROADS.—A COMPLAINT alleging that the agent of a railroad corporation having entered upon the lands of plaintiff and, while engaged in the construction of the railroad, cut off branches of trees, does not state a trespass upon real property, in absence of allegation that entry was without consent of plaintiff.
3. IBID.—PRINCIPAL AND AGENT—CAUSE OF ACTION—RAILROADS—CURSES—THREATS.—Allegations that agents of a railroad corporation, while employed in constructing its line of road, cursed and threatened plaintiff, does not state a cause of action against the corporation, because (1) such words are not civilly actionable, (2) they are acts of agents *without* the scope of their authority.

Before ALDRICH, J., Lexington, February, 1900. Affirmed.

Action by complaint set out in opinion by L. C. Rankin against Sievern and Knoxville R. R. Co. and Carolina Midland R. R. Co. The decree appealed from is as follows:

"This case comes before the Court upon a motion, in the nature of a demurrer, to dismiss the complaint herein upon the grounds that said complaint does not state facts sufficient to constitute a cause of action in said complaint, and the notice of the motion to dismiss the same must be read at this point as a part of this decree. A demurrer admits all the facts properly pleaded in the complaint. Therefore, all of the facts stated in the complaint in this action must be regarded

as true for the purposes of this motion.   This rule does not
refer to, or include, statements of conclusions of law.   What
are the facts stated in the complaint: Paragraphs 2 and 3
specifically state that both of the defendants are railroad cor-
porations, 'duly organized and existing' under the laws of
this State.   As such they are common carriers, and author-
ized to enter upon and acquire rights of way.   Paragraph 1
alleges that the plaintiff was at the time stated in the com-
plaint, and still is, the owner in fee of a certain tract of land
'through which the line of the Sievern and Knoxville Rail-
road has since been constructed, and that she was at that
time and still is residing on said tract of land.'   Paragraph
4 states that on or about the third day of May, 1898,
'the defendants had in their employ' a certain gang of hands
'then engaged in finishing and grading and laying the track
and putting up telegraph poles along the line of the said Sie-
vern and Knoxville Railroad Company, the said gang being
jointly employed by the Carolina Midland Railroad Com-
pany and the Sievern and Knoxville Railroad Company,
under some arrangement or agreement, the terms of which
are unknown to the plaintiff.'   Paragraph 5.   'That the said
gang of hands, under one Rutledge, as foreman, was em-
ployed by both of the said defendants, and in the course of
their engagement as such were proceeding along the line of
the proposed track of the Sievern and Knoxville Railroad
Company, and without having acquired a right of way
through the lands of this plaintiff, and were in the act of
cutting down two large oak trees of great beauty and value
which stood near the residence of this plaintiff, when she
approached them and requested them not to do so, where-
upon the said Rutledge, foreman of said gang of hands,
cursed this plaintiff and ordered her to get away from there
or he would put her in the penitentiary, and threatened to
strike her, and greatly frightened and intimidated her, she
being an old woman, and otherwise maltreated and abused
her to her great damage.'   It is also alleged that said Rut-
ledge and hands, 'with great violence and loud cursing,' fol-

lowed Hiram Rankin, the son of plaintiff, who came up at
the time, towards plaintiff's house.    Hiram Rankin is not a
party to this action.  The complaint, after stating these facts,
adds, 'and thereupon,' the said Rutledge and hands 'pro-
ceeded to lop off several of the most beautiful branches of
said oak trees, but did not cut them down.'    It is possible to
read this complaint in various ways.    The cause of action
may be either: 1st.  The lopping off of 'several of the most
beautiful branches' of 'two large oak trees of great beauty
and value which stood near the residence' of plaintiff; 2d,
trespass upon the realty, or 3d, trespass upon the person of
plaintiff.    As the question is, does the complaint state facts
sufficient to constitute any cause of action? and not, does it
state facts sufficient to constitute a certain cause of action?
We must answer the first query: As the lopping off of the
branches of the oak trees was an injury to the realty, and
may be included in the second cause of action above stated,
we will divide the alleged trespasses into two classes: first,
what is alleged as a trespass upon the realty, and, second,
what is alleged as a trespass upon the person of plaintiff.

"The complaint does not state facts sufficient to constitute
an action of trespass upon the realty.    The complaint states
that defendants, railroad corporations, had entered and taken
possession of the land, the strip on which the hands
were 'then engaged in finishing and grading and lay-
ing the track, and putting up telegraph poles along the
line of the said Sievern and Knoxville Railroad Company.'
This allegation and the complaint, read as a whole, clearly
state that the defendants had not only entered upon the
strip of land, but were also actually and actively engaged
in the construction of their railroad thereon.    It was argued
that the allegations in paragraph 1, that the plaintiff was and
is the owner of the land 'through which the line of the rail-
road has since been constructed,' negatives the idea that the
defendants were in the possession of the land, and construct-
ing a railroad thereon, the argument being that, 'if the rail-
road has been constructed "since" the date of the alleged tres-

pass, it was not constructed at said date.' Sec. 1752, R. S. of 1893, reads: 'Nothing herein contained shall be construed to prevent entry upon any lands for purposes of survey and location; and if in any case the owner of any lands shall permit the person or corporation requiring the right of way over the same to enter upon the construction of the highway without previous compensation, the said owner shall have the right, after the highway shall have been constructed, to demand compensation, and to petition for an assessment of the same in the manner hereinbefore directed: Provided, such petition shall be filed within twelve months after the highway shall have been completed through his or her lands.' Under this act, if a railroad corporation is permitted by the owner of any land 'to enter upon,' begin 'the construction of the highway,' then the entry, possession and subsequent construction, as we shall see hereafter, is lawful, and in no wise a trespass. If the owner of the lands permit the corporation 'to enter upon the construction of the highway,' he has the right, 'after the highway shall have been constructed,' completed, to demand compensation, as provided in said act. The words used in paragraph 1 of the complaint, above stated, when read in connection with the other allegations of the complaint, mean that the 'line' of the railroad, the 'highway,' as termed in the statute, was then located, the defendants were in possession and had entered upon the construction of said highway under the law; and under this state of facts the defendants were lawfully in possession of the land, and with the permission of plaintiff; counsel for plaintiff argue that the allegations in paragraph 4 of the complaint: that the hands were 'then engaged in finishing, grading and laying the track, and putting up telegraph poles along the line of the road,' is consistent with the idea that said hands were at work on the part of the line which did not traverse the land in question; therefore, that paragraph does not amount to an allegation that defendants were in possession of the land in question. This construction of the language of the complaint cannot be sustained. It is the duty of

plaintiff to state her case.   On May 3d, 1898, at the very
time of the trespass, the allegation is that 'the gang of hands'
were *'then'* engaged in 'grading, etc.,' the 'line;' that 'in the
course of their engagement' they were 'proceeding along the
line,' and were 'in the act' of cutting the oak trees 'near the
residence' of plaintiff, when she 'approached them,' etc.    No
one would, 'under these allegations,' suppose that the 'fore-
man' and 'gang of hands' were upon the premises of the
plaintiff merely 'for the purposes of survey and location,' R.
S., sec. 1752; but the natural inference is, that they had
entered upon, begun 'the construction of the highway.'    The
allegation in paragraph 5, that defendants had not 'acquired
a right of way through the lands of this plaintiff' were insuf-
ficient.   *Tompkins* v. *R. R. Co.,* 33 S. C., 218.   Plaintiff con-
tends that the complaint alleges that the defendants had not
acquired, in any way, a right of way across plaintiff's lands;
therefore, they had no right of entry except for the purpose
of survey and location, which does not allow defendants to
cut down valuable trees or to make any alteration of the
premises.    That the foreman and hands were committing 'a
trespass in the name of the defendants,' and that 'the line of
authorities in South Carolina, which hold that the land once
taken possession of by a railroad company under the exer-
cise of the right of eminent domain, cannot be recovered in
an action, is entirely inapplicable to the case;' and, in support
of this position, cites *Tompkins* v. *R. R. Co.,* 27 S. C., 387,
as conclusive upon the point : 'I have at some length analyzed
the complaint, and held that it does allege that the defendant
companies had entered upon the land in question, and were
engaged in the construction of their road or highway; and a
comparison of the complaint in this action with that in
*Tompkins* v. *R. R. Co., supra,* will show that there is little
in common between the two.'    There is no allegation in the
complaint herein that the entry of the defendant companies
upon the land was without the consent of plaintiff, which,
under the Tompkins case, is essential.    There are no allega-
tions in the complaint that defendants entered upon the land

after notice from the owner refusing consent, or of like matters; but all that is said is, in substance, that the defendants, by their servants, were proceeding along the 'line' which was 'then' being graded, etc., 'without having acquired a right of way through the lands of this plaintiff,' which allegation amounts to nothing; for the statute expressly provides the mode of enforcing the right to obtain compensation after a railroad company has entered upon the construction of its road, and the sole question here is, whether or not defendants had entered upon the construction of their road, under the right of eminent domain, which frees defendants from the charge of being trespassers. As the Tompkins case is relied upon by plaintiff, I will refer to it again; at page 383, the allegations in the complaint are substantially stated. Then the plaintiff distinctly and affirmatively alleges that when the railroad company went upon the premises, said company did not notify plaintiff that the right of way would be required; and, also, that the plaintiffs, as soon as they ascertained that the railroad would probably extend or run through the premises, gave notice to the railroad company that they objected to the same, and required that the company should proceed according to law. It was alleged that this notice was 'formally' given, and because the allegation did not state that the notice was 'in writing,' the complaint was demurrable. In the complaint under consideration there is not the slightest allegation that any notice was ever given by the plaintiff, nor that she did not consent to the use of the land by the railroad; and there is a statement that the 'line' was 'then' being 'constructed;' under the law, as we shall see, it must be presumed that she permitted defendants to 'enter' upon her land. It is true that there is an allegation in the complaint that the defendants never notified the plaintiffs that the right of way over their lands was required for the purpose of constructing the railroad; but, as held in *Verdier* v. *R. R. Co.,* 15 S. C., 476, such notice was necessary when, as is alleged in this complaint, the plaintiffs had knowledge of the intended entry, and failed to signify in

writing their refusal of consent, from which failure the stat-
ute expressly says it shall be presumed that consent was
given.' *Tompkins* v. *R. R. Co.,* 37 S. C., 386. · There is no
allegation in the complaint in this action, that any objection
was made to the entry of defendants, or that any notice was
given to the railroad company.    It follows, therefore, under
the statute, that plaintiff permitted, consented to the laying
of the track, etc.    Under the statute law of this State and
the adjudication thereunder, the plaintiff cannot maintain
an action against the defendants herein, railroad corpora-
tions, for trespass upon her lands; and all special damages
connected with the entry upon the land and the construction
of the railroad thereon, such as the cutting down of shade
trees, must be recovered in the special and exclusive mode
laid down and provided in the statute, viz: by the method of
condemnation.· · Without discussing, I will cite as authority
for this ruling a few of the authorities: *Tutt* v. *Ry. Co.,* 28
S. C., 397; *McLaughlin* v. *R. R. Co.,* 5 Rich., 598; *Fuller* v.
*Eddings,* 11 Rich., 247; *Sams* v. *R. R. Co.,* 15 S. C., 487;
*Verdier* v. *R. R.,* 15 S. C., 481; *Ganeaux* v. *Greenville,* 53 S.
C., 575; *Bowen* v. *R. R.,* 17 S. C., 574; *Leitzsey* v. *Water
Power Co.,* 47 S. C., 484; and authorities then cited.    Under
these authorities, and our statutes, R. S., sec. 1743 to 1755,
no cause of action lies at common law, as stated, for the tres-
pass upon the realty in question.

"I will next consider the other branch of the case, the
alleged trespass upon the nerson of the plaintiff, while the
allegations of the complaint that Rutledge, the 'foreman' of
the hands, 'cursed' the plaintiff, 'an old woman,'
ordered her "to get away from there or he would put
her in the penitentiary;' 'threatened' to strike her;
frightened and intimidated her, and 'otherwise maltreated
and abused her,'place said Rutledge in an unenviable and con-
temptible position in said complaint, they do not in any way,
allege an actionable act or assault against plaintiff, or injury
of any kind to her person or her character which is action-
able?    Suppose the complaint charged that Rutledge had

assaulted plaintiff, which it does not, would that give to the
plaintiff a cause of action against these defendants, or either
of them? I think not, for the reason that the language and
conduct complained of were outside of the scope and employ-
ment of Rutledge, and the defendants are not responsible
for any voluntary assault or trespass which Rutledge may
have committed. *Williams* v. *Pullman Car Co.,* 8 Am.
State Rep., 538; *Rounds* v. *Delaware R. R. Co.,* 21 Am.
Rep., 602; and *Rucker* v. *Smoke,* 37 S. C., 381. If defend-
ants were persons and not corporations, and had spoken and
acted as the complaint charges against Rutledge, as their
agent, plaintiff could not maintain an action against them
similar to the present action, for the reason that curses and
threats, while immoral, are not actionable in law. If a prin-
cipal would not be liable for personally committing a certain
act, he would not be liable for that act if it was committed by
an agent. In *Rucker* v. *Smoke,* 37 S. C., 381, the Supreme
Court quotes, with approval, the rule as stated in 1 Am. and
Eng. Enc. of L., at page 410, which is as follows: 'A princi-
pal is liable to third parties for whatever the agent does or
says; whatever contracts, representations or admissions he
makes; whatever negligence he is guilty of, and whatever
fraud or wrong he commits; provided, the agent act within
the scope of his apparent authority; and, provided, a liability
would attach to the principal if he was in the place of the
agent.' The last clause cited is full and clear, and sustains
the proposition stated. The doctrine is then stated in
Wood's Master and Servant, sec. 322 : 'The master can never
be held chargeable for an act of the servant unless he would
have been liable if he had done the act himself; therefore,
unless an injury results from a negligent or unlawful act, no
liability attaches.' If Rutledge had been the agent of a
common carrier of passengers, and plaintiff had been a pas-
senger under the contractual relations of carrier and pas-
senger to safely carry her, etc., and while being transported
as a passenger, Rutledge, as the agent of defendants, had ad-
dressed her as stated in the complaint herein, his curses,

threats, etc., would have created a cause of action against the railroad company.   The complaint does not allege the existence of any contractual relations between plaintiff and defendant.   Defendants' agents were where they had a right to be, engaged in lawful duties, when the plaintiff 'approached' them, and 'requested' them not to do that which they had a legal right to do.   She was an outsider.   Rutledge, for the language, curses, etc., addressed to plaintiff, might be held criminally, by binding him over to keep the peace, or perhaps, for a breach of the peace, but no liability would result therefrom to the defendants.   'To constitute a tort, two things must concur—actual or legal damage to the plaintiff, and *wrongful* act committed by the defendant.'   1 Addison on Torts, sec. 1: 'There may be a wrong done to another, but if it has not caused what the law terms *actual* legal damage to the plaintiff, there is no tort in respect of which an action is maintainable.'   *Ib.,* sec. 8: 'An act or omission may be wrong in morals, or it may be wrong in law. It is scarcely necessary to say that the two things are not interchangeable.   No government has undertaken to give redress whenever an act was found to be wrong, judges of the standard of strict morality, nor is it likely that any government ever will.'   Cooley on Torts, p. 3: 'A threat to commit an injury is also sometimes made a criminal offense, but it is not actionable private wrong.   Many reasons may be assigned for distinguishing between this case and that of an assault—one of them being that the threat only promises a future injury, and usually gives ample opportunity to provide against it; while an assault must be resisted on the instant.   But the principal reason, perhaps, is found in the reluctance of the law to give a cause of action for mere words; words never constitute an assault, is a time-honored maxim.   Words may be thoughtlessly spoken; they may be misunderstood; they may have indicated to the person threatened nothing but momentary spleen or anger, though when afterwards reported by witnesses they seem to express deliberate malice and purpose to injury—even when defama-

tion is complained of, the law is very careful to require something more than expressions of anger, reproach or contempt, before it will interfere.    Justly considering that it is safer to allow too much liberty than to interpose too much restraint. And comparing assaults and threats, another important difference is to be noted.    In the case of threats, as has been stated, preventive remedies are available; but against an assault there are usually none beyond what the party assaulted has in his own power of physical resistance.' Cooley on Torts, p. 29.

"To recapitulate, I hold that any claim that plaintiff may have against the defendants for the entry upon her land by the defendant companies, either by way of compensation or special damages, must be sought and obtained by the special proceeding provided in the statute; that said special proceeding or remedy is not cumulative; but it is exclusive, and precludes and bars plaintiff of the remedy she here seeks, which is a suit for a trespass *vi et armis.*

"Further, the other elements of damage alleged by plaintiff in her complaint, in the nature of threats and abuse on the part of Rutledge, as the agent of defendants, are not actionable, for the reason that they were not within the scope of his employment, even had they been assaults and batteries, and other personal enormities; but they were threats and abuse which, while immoral, are not actionable in law.

"Wherefore, it is ordered, adjudged and decreed, that the complaint herein does not state facts sufficient to constitute a cause of action, and that the said complaint be, and hereby is, dismissed, and that the plaintiff do pay the costs of this action."

From this decree, plaintiff appeals.

*Mr. Edwin Folk Strother,* for appellant, cites: *As to the rights of the landowner:* 37 S. C., 381, 387; *Rev. Stat.,* 1743, 1752; 13 S. C., 18.

*Messrs. Hendersons,* contra, cite: *Complaint fatal in not*

*alleging that the entry was without consent:* 37 S. C., 385; 15 S. C., 476; Rev. Stat., 1752.

September 13, 1900. The opinion of the Court was delivered by

MR. JUSTICE JONES. The Circuit Court sustained a demurrer to (or motion to dismiss) the complaint for insufficiency in stating a cause of action. The complaint, which we copy in full, is as follows: "1. That the plaintiff is and was at the times hereinafter stated, the owner in fee of a certain tract or parcel of land, situate in the State and county above named, through which the line of the Sievern and Knoxville Railroad has since been constructed, and that she was at the time and still is residing on said tract of land. 2. That the defendant, Sievern and Knoxville Railroad Company, is a corporation duly organized and existing under the laws of the State of South Carolina. 3. That the defendant, Carolina Midland Railway Company, is a corporation duly organized and existing under the laws of the State of South Carolina. 4. That on or about the 3d day of May, 1898, the defendants had in their employment a certain gang of hands then engaged in finishing and grading and laying the track, and putting up telegraph poles along the line of the said Sievern and Knoxville Railroad Company, the said gang being, as plaintiff is informed and believes, jointly employed by the Carolina Midland Railway Company and the Sievern and Knoxville Railroad Company, under some arrangement or agreement, the terms of which are unknown to this plaintiff. 5. That said gang of hands, under one Rutledge, as foreman, was employed by both of said defendants, and in the course of their engagement as such, were proceeding along the line of the proposed track of the Sievern and Knoxville Railroad Company, and without having acquired a right of way through the lands of this plaintiff, and were in the act of cutting down two large oak trees of great beauty and value which stood near the residence of this plaintiff, when she approached them and re-

quested them not to do so; whereupon the said Rutledge, foreman of said gang of hands, cursed this plaintiff and ordered her to get away from there or he would put her in the penitentiary, and threatened to strike her, and greatly frightened and intimidated her, she being an old woman, and otherwise maltreated and abused her to her great damage; whereupon her son, Hiram Rankin, came up and inquired the cause of her trouble; whereupon the said Rutledge called the hands employed on the material train, in the employment of both the said defendants, and with great violence and loud cursing, followed the said Hiram Rankin towards the plaintiff's house, threatening and abusing him in a violent manner, and thereupon proceeded to lop off several of the most beautiful branches of the said oak trees, but did not cut them down. 6. That the said defendant, by the said Rutledge and their hands, whose names are unknown to this plaintiff, thus broke plaintiff's close, trod down the grass, and in a most violent and outrageous manner insulted, intimidated and threatened this plaintiff to her damage $10,000, together with the costs of Court."

We think the demurrer was properly sustained, and that the conclusions reached were amply vindicated in the elaborate and learned opinion of the Circuit Court, which is officially reported herewith.

We will only make a brief observation or two. First, treating the the complaint as one for trespass upon real property, with circumstances of aggravation alleged, with a view to exemplary damages. The alleged circumstances of aggravation must be eliminated in determining the demurrer, since to avoid demurrer on this ground, the complaint must show facts sufficient to constitute a trespass upon land. We must also eliminate from the complaint the words "without having acquired a right of way through the lands of this plaintiff," in the 5th paragraph of the complaint, since they present a mere conclusion of law, which is not admitted by a demurrer. We must also eliminate the statement in the sixth paragraph of the complaint,

that defendants "thus broke plaintiff's close, &c.," since such statement is a mere characterization of facts previously alleged, which in themselves must show a breaking of plaintiff's close. A railroad corporation, chartered under the laws of this State, and authorized to construct a railroad, is not a trespasser for entry upon lands for the purpose of such construction, unless such entry is made without the consent of the owner, and it is necessary to the cause of action to allege the absence of such consent. *Tompkins* v. *R. R.,* 37 S. C., 382. The complaint, then, is fatally defective for failure to make such allegation. So far . as the complaint shows, the only objection ever made by plaintiff was as to cutting down the two oaks, and it appears that they were not cut down. As the route of the railroad was very near plaintiff's dwelling, she must have had knowledge of the first entry for construction, and having made no objection thereto in the manner required by statute, her consent would be presumed, and her only remedy would be for compensation under the condemnation statutes. *Verdier* v. *R. R.,* 15 S. C., 476; *Tompkins* v. *R. R., supra; Leitzsey* v. *Water Power Co.,* 47 S. C., 477.

If the complaint may be treated as one for trespass upon the person, no assault upon the plaintiff is alleged, and mere words under the circumstances stated would not be civilly actionable. We are quite satisfied with the conclusion of the Circuit Court herein.

The judgment of the Circuit Court is affirmed.