8541

## ELLISON v. GREENVILLE, SPARTANBURG & ANDERSON RAILWAY CO.

1. CONDEMNATION—RIGHTS OF WAY.—Under the condemnation statutes a railroad company may enter lands of another for construction by consent, which may be inferred from facts and circumstances, without serving notice of intention to enter. Where a wife and a husband each execute a separate deed of a right of way to a railway company, the title to the lot conveyed by the husband being in the wife, she having renounced her dower right on the husband's deed, it may be inferred the railway company entered with the wife's consent.

2. SPECIAL VERDICTS—IBID.—Where an action is brought to set aside a deed of a right of way in consideration of a specific amount expressed on its face on the ground that the deed was obtained by fraud and for damages for constructing railroad, and on the special issue, the jury finds the deeds were not obtained by fraud and the general verdict for damages is larger than the consideration expressed in the deeds, the recovery should be limited to the amount of consideration expressed in the deeds.

3. VERDICTS—NEW TRIAL.—Where the general verdict in such action is stated by the jury to include the amount expressed in the deeds and no objection is made, a judgment absolute for the amount expressed in the deeds and not a new trial *nisi* should be granted.

*The* CHIEF JUSTICE *and* MR. JUSTICE WATTS *dissent.*

Before MEMMINGER, J., Anderson, February term, 1912. Reversed.

Action by Rebecca J. and William Ellison against Greenville, Spartanburg and Anderson Railway. Defendant appeals.

*Messrs. Osborne, Lucas & Cocke, Haynsworth & Haynsworth* and *Bonham, Watkins & Allen,* for appellant. *Messrs. Haynsworth & Haynsworth* cite: *Assent to enter may be implied:* 15 S. C. 403; 37 S. C. 382; 28 S. C. 400; 47 S. C. 465; 11 Rich. 239; 15 S. C. 483; 33 S. C. 477. *Special findings shall govern:* Code Proc. 322; 38 Cyc. 1927.

*Mr. J. J. McSwain,* contra, cites: *Action for damages will lie where company enters without color of title:* 66 S. C. 30; 78 S. C. 419; 77 S. C. 244.

March 15, 1913. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiffs, through the wrongful acts of the defendant, in entering upon their lands as a trespasser, before acquiring a right of way.

The allegations of the complaint, material to the questions involved, are as follows:

"That during the month of April, 1911, the defendant, railway company, by its agents and servants, approached plaintiffs to secure from the plaintiff, Rebecca J. Ellison, a right of way over and across her property in said county and State, situated in the town of Honea Path, consisting of two lots of land; and then and there said defendant, railway company, by its agents and servants, did knowingly, falsely, and wilfully misrepresent and misstate the facts, in connection with the grade and condition of the proposed roadbed, through and upon the said lots of land belonging to the said plaintiff, in that said agent and servant, did then and there state, that the roadbed at and along said property, would be about level with the natural surface of the ground as it now lies; whereas, in fact, as plaintiffs are now informed and believe, the survey of said railway company at said point, makes necessary a cut through the said lots of land belonging to the said plaintiff, about twenty (20) feet deep, and, therefore, about thirty (30) feet broad at the top, thereby practically destroying the value of the said lots of land, for any other purpose.

"That by reason of the facts aforesaid, plaintiffs are informed and believe, that the agreement signed by them, consenting and agreeing that said defendant, railway company, should have the right to go over and through said lots

of land, in consideration of the small sum of seven hundred and fifty ($750) dollars, is null and void, because of the fraud of the agents and servants of said defendant, railway company.

"That by reason of the unlawful, wrongful, high-handed, wanton and outrageous invasion of the rights of the plaintiffs by the defendants, in trespassing upon and taking possession of their property, without having first acquired the right to do, as provided by law, plaintiffs have been damaged in the sum of three thousand ($3,000) dollars, in that a deep cut has been dug through their lots of land."

The defendant, in its answer admitted that the plaintiffs, had agreed to convey the right of way through said lots, for seven hundred and fifty dollars, which it promised to pay; and that it was constructing its road through said lots; but denied the allegations of fraud, and all the other allegations of the complaint.

The two lots adjoin each other; one of them fronts on Chiquola avenue, and the other on Shirley street. The Shirley street lot is in the rear of the Chiquola lot.

Both plaintiffs testified as witnesses, and their testimony shows, that they agreed to give the defendant a right of way over both lots, for the sum of seven hundred and fifty dollars; that J. A. Davidson, the agent of the railway company, drew the deeds purporting to convey the right of way over both lots, in the presence of the plaintiffs—the deed executed by the plaintiff, Rebecca J. Ellison, describing the right of way over the Shirley street lot, and the deed executed by the plaintiff, W. M. Ellison, describing the right of way over the Chiquola lot, on which deed the plaintiff, Rebecca J. Ellison, renounced her dower.

The deed executed by Mrs. Rebecca J. Ellison, conveying the right of way, mentions the lands of W. M. Ellison as one of the boundaries, describing the Chiquola lot.

It was at this time, that the defendant agreed to give the plaintiffs seven hundred and fifty dollars as compensation

for said right of way. Neither of the plaintiffs said anything about the title to the Chiquola lot being in the plaintiff, Rebecca J. Ellison.

Thereafter, the defendant entered upon the said lots, for the purpose of constructing its roadbed.

The jury rendered the following verdict: To the question submitted by the Judge, to wit: "Was the deed from Mrs. Ellison to the railway company, covering that lot known here in the evidence as the Shirley lot, obtained by fraud or not?" the jury answered "No." The jury also rendered a general verdict in favor of the plaintiffs for twelve hundred and fifty dollars. Thereupon, the defendant gave notice of motion for judgment, in favor of the defendant *non obstante veredicto,* and to set aside the general verdict, on the ground: (1) that under the pleadings the special verdict and general verdict, were inconsistent with each other, and that the special verdict should control; (2) that there was no evidence to sustain the general verdict.

These motions were overruled, and the defendant appealed.

The first exception is as follows: "The Judge erred in charging the jury, that as the deed conveying the right of way for one lot (the Chiquola avenue lot), was signed by Mr. Ellison and not by Mrs. Ellison, it was not binding upon her, and the railway company had no right to go on the premises under the agreement. It being submitted, (a) that the plaintiffs, in their complaint, did not contest the proper execution of either of the deeds by the plaintiffs, or their duly authorized agents, but, on the contrary, alleged that the agreement giving the railway company the right of way, over both of said lots, was null and void, because of fraud and misrepresentation. (b) Because under the statutes of this State, the deed executed by Mr. Ellison, with the knowledge and consent of Mrs. Ellison, was sufficient to show consent of Mrs. Ellison to entry by the

railway company, and to give to the railway company, the right of entry upon the said land."

For similar reasons, the second exception assigns error on the part of his Honor, the Circuit Judge, in charging the jury, "that there was no dispute in the evidence, but that the railway company entered on the lot, without any deed or agreement from the real owner, Mrs. Ellison, and that this would constitute a trespass."

Section 3292 of the Code of Laws (1912) is as follows: "Whenever any person or corporation, shall be authorized, by charter to construct a railway, canal or turnpike in this State, such person or corporation, before entering upon any lands for the purpose of construction, shall give the owner thereof (if he be *sui juris*) notice, in writing, that the right of way over said lands, is required for such purpose, which notice shall be given at least thirty days, before entering upon said lands; and such notice shall be served upon such owner, in the same manner as may be required by law, for the service of the summons in civil actions. If the owner shall not, within the period of thirty days after service of said notice, signify, in writing, his refusal or consent, it shall be presumed that such consent is given; and such person or corporation may, thereupon, enter upon said lands; but the owner of said lands may move for an assessment of compensation, in the manner hereinafter directed."

Section 3301 of the Code of Laws (1912), is as follows: "Nothing herein contained, shall be construed to prevent entry upon any lands, for purposes of survey and location; and if in any case the owner of any lands shall permit the person or corporation requiring the right of way over the same, to enter upon the construction of the highway, without previous compensation, the said owner shall have the right, after the highway shall have been constructed, to demand compensation, and to petition for an assessment of the same, in the manner hereinbefore directed: *Provided,* Such petition shall be filed within twelve months, after the

highway shall have been completed through his or her lands."

In construing these sections, the Court used the following language, in *Verdier* v. *R. R.,* 15 S. C. 476 : "It is insisted, that under these provisions, there could be no permission to enter upon the construction of the highway, before the owner had received the notice required by a previous section; that such notice must be the first essential step, to set up the easement, and, in fact, a condition precedent, to securing any rights whatever under the act, by *permission, possession, consent, or otherwise.*

"The requirement as to notice was made, manifestly, with a view to formal proceedings to assess the value, in case of refusal, but surely it was never intended, that the owner could not give the 'permisson' without first receiving formal notice, without which the right to object remained in obeyance indefinitely. The notice was intended for the benefit of the company, in case of objection, to give them a starting point to condemn the lands, but was unnecessary in case of consent. As the owner could give 'permission' without receiving previous notice, it might be inferred from facts and circumstances." See, also, *Tompkins* v. *R. R.,* 37 S. C. 382, 16 S. E. 149; *Leitsey* v. *Water Power Co.,* 47 S. C. 485, 25 S. E. 744, 34 L. R. A. 222, and *Rankin* v. *R. R.,* 58 S. C. 532, 36 S. E. 997.

The facts and circumstances in the present case, together with the instruments of writing conveying the easement, tended to show, that the defendant entered upon the lands for the purpose of construction, by the consent of both plaintiffs. And, as the verdict of the jury showed, that there was no fraud on the part of the defendant, it was error for his Honor, the presiding Judge, to charge the jury, as stated in said exceptions, which are sustained.

The next question for determination, is, whether his Honor, the presiding Judge, "erred in overruling defendant's motion for judgment *non obstante veredicto* in favor

of the plaintiffs. It being submitted, that by the special verdict, the jury found that the deeds were not obtained by the defendant company, through fraud and misrepresentation, thereby finding against the plaintiffs on the ground presented by the complaint as a cause of action, and that under the law of this State, the special verdict should prevail over the general verdict."

Section 322 of the Code (1912), is as follows: "Where a special finding of facts, shall be inconsistent with the general verdict, the former control the latter, and the Court shall give judgment accordingly."

In *Bowdre* v. *Hampton*, 6 Rich. 213, it is said that judgment *non obstante veredicto,* can be rendered only for a plaintiff. "A judgment upon the special findings of a jury, but against their general verdict, is not really judgment *non obstante veredicto,* although often inaccurately so-called. A motion for judgment *non obstante veredicto,* is a motion for a judgment, on the pleadings without regard to the verdict; but a motion for a judgment, on the special finding of the facts, notwithstanding the general verdict, has no reference whatever to the pleadings in the case, and proceeds upon the theory, that the special finding of facts by the jury, is so inconsistent with their general verdict, that the former should control the latter, and the Court should give judgment accordingly." 11 Enc. Pl. & Pr. 924-5.

When the jury returned to the Court room after having agreed upon a verdict, the record shows that the following took place:

Court: "I would like to find out from the jury, whether or not the jury intended that verdict to be inclusive or exclusive, of the seven hundred and fifty dollars. I wish you would return to your room, and debate that question.

Foreman of the jury: "We discussed that, and we mean that is included for the whole amount.

Court: "You mean this is for the whole thing?

Foreman: "Yes, sir."

The general verdict of the jury, was composed of two elements: one based upon the theory, that the defendant entered into the possession of the lots, under and by virtue of the plaintiffs' consent, in consideration of which the defendant agreed to pay to the plaintiffs, the sum of seven hundred and fifty dollars, which was only recoverable upon the hypothesis, that the agreement between the plaintiffs and the defendant, was valid; the other based upon the theory, that the instruments of writing executed by the plaintiffs, conveying the right of way to the defendant, were fraudulent, null and void, and afforded no protection to the defendant, whose entry upon the lots for the purpose of construction was unlawful, and that it, therefore, became a trespasser.

The special verdict showed, that there was no fraud on the part of the defendant, and, therefore, that the plaintiffs were not entitled to recover damages against the defendant, on the ground that it was a trespasser.

It was, therefore, error for the jury, to render a general verdict in excess of the sum of seven hundred and fifty dollars, which the defendant agreed to pay for the right of way; and we will next consider the effect, of including that sum in the verdict.

It appeared from the allegations of the complaint, that the defendant was indebted to the plaintiffs in the sum of seven hundred and fifty dollars, being the purchase money for the right of way. The defendant, in its answer, admitted being indebted to the plaintiffs to that amount, and such fact was also shown by the testimony. When the jury, upon inquiry by the Court, stated that said sum was included in their general verdict, the defendant did not interpose any objection whatever; and the verdict was then published, with its apparent consent. Nor did the defendant afterwards make a motion, that the verdict be set aside on the ground, that said item was improperly included in the verdict. The first ground of the motion, which the defend-

ant thereafter made was, that under the pleadings, the special verdict and general verdict were inconsistent with each other, and that the special verdict should control.

As we have already shown, the verdict to the extent of the seven hundred and fifty dollars, was not inconsistent with the special verdict, but, on the contrary, that said sum would not have been recoverable, if the jury had found that there was fraud, on the part of the defendant.

The second ground of the motion was that there was no evidence to sustain the general verdict.

As we have already stated, the allegations of the complaint, the admissions of the answer, and the testimony showed, that the defendant was indebted to the plaintiffs in that amount, and that when the jury, without objection, included that amount in their verdict, it was then too late for the defendant to make objection. If the jury had rendered a general verdict in favor of the defendant, it would have been *res adjudicata* as to that question, unless the verdict had been set aside. Therefore, it is only just and fair, that the verdict to this extent should be binding on the defendant. As the defendant does not deny its indebtedness to the plaintiff, to the extent of seven hundred and fifty dollars, we see no necessity for granting a new trial generally, but will order it *nisi*.

It is, therefore, the judgment of this Court that the case be remanded to the Circuit Court for a new trial, unless the plaintiff shall remit upon the record, so much of the verdict as exceeds the sum of seven hundred and fifty dollars and interest, within twenty days after the remittitur has gone down.

May 10, 1913. Per Curiam. Upon consideration of the petition for a rehearing in this case, it appears that, by its judgment, granting a new trial generally, "unless plaintiff shall remit upon the record so much of the verdict as exceeds the sum of seven hundred and fifty dollars and

interest," the Court has inadvertently put it into the power of the plaintiff, by refusing to remit as required, to have the special verdict set aside, notwithstanding its correctness has not been questioned by either party, and notwithstanding the mandate of the statute (Code of Proc., sec. 322, quoted in the opinion of the Chief Justice) that the Court shall give judgment, in a case like this, according to the special verdict. The opinion of the Chief Justice shows clearly that, unless the special verdict is set aside, and plaintiff's attack upon the validity of her deeds sustained, plaintiff can not recover more than seven hundred and fifty dollars and interest. As the record presents no ground upon which the special verdict can be set aside, it follows that in obedience to the statute, it must control and judgment must be rendered accordingly. Therefore, the judgment of this Court should have been, and now is, that the judgment of the Circuit Court be modified so that plaintiff shall recover of defendant seven hundred and fifty dollars and interest thereon together with the costs and disbursements of the action.

THE CHIEF JUSTICE.   I can not concur in the conclusion, that the judgment of this Court should be modified, for the reason that the verdicts are so interwoven that if one of them is set aside there must be a new trial *de novo.*

MR. JUSTICE WATTS *concurs.*