WILBUR, Secretary of the Interior, v. UNIT-
ED STATES ex rel. STUART.
No. 5376.

Court of Appeals of District of Columbia.
Argued Oct. 6, 1931.
Decided Nov. 2, 1931.

O. H. Graves and Victor H. Wallace, both of Washington, D. C., for appellant.

Chester I. Long, Peter Q. Nyce, and S. W. McIntosh, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This is an appeal by the Secretary of the Interior from a judgment of the Supreme Court of the District of Columbia directing the issuance of a peremptory writ of mandamus against the Secretary, directing him to issue to the relator, Wilbur F. Stuart, an unrestricted patent to certain public lands located in the state of New Mexico.

Relator, on June 16, 1923, made an original homestead entry under the provisions of the Enlarged Homestead Act of February 19, 1909 (35 Stat. 639, as amended 43 USCA § 218), for 320 acres of land. On April 24, 1924, relator was allowed an additional homestead entry, under the provisions of the Act of Congress of December 29, 1916 (39 Stat. 862 [43 USCA § 291 et seq.]), commonly known as the Stock-Raising Homestead Law, for 320 acres adjoining the original entry, making a total of 640 acres.

After the allowance of his original entry, relator constructed a habitable house on the land embraced in the original entry and established his residence thereon December 1, 1923. When he made his additional entry he removed his house in May, 1924, onto the land embraced in his stock-raising entry and thereafter maintained his actual residence therein.

On July 17, 1926, prior to the submission of final proof by relator on his original entry, one Carlson filed his application for a prospecting permit, under the Leasing Act of February 25, 1920 (41 Stat. 437 [30 USCA § 181 et seq.]), covering, among other lands, the lands embraced in relator's homestead entry. When the Carlson application was referred to the General Land Office, the commissioner, on September 10, 1926, transmitted it to the Director of the Geological Survey with a request for a report, and on September 20, 1926, the director recommended the allowance of a permit.

On December 10, 1926, relator made final proof, under his original homestead entry, receiving the usual final receipt covering the payment of fees. In March, 1927, the Commissioner of the General Land Office requested a further report from the Geological Survey as to the mineral character of the land, and again the director recommended "that a prospecting permit be issued to the applicant who may be entitled thereto."

On April 6, 1927, the Commissioner of the General Land Office directed the register of the land office at Las Cruces, N. M., to notify the relator that he would be given fifteen days in which to file a waiver of the oil and gas or to make protest to the demand thus made. Whereupon, relator filed a request for a nonmineral classification of the lands contained in his homestead entry. This request was referred to the Director of the Geological Survey, who made the following report and recommendation: "The showing submitted by the homestead entryman contains no geologic evidence in addition to that already considered in connection with the tentative classification of this land heretofore reported. Available geologic evidence, including the results of a field examination of adjacent tracts, indicates that the land listed is an area almost entirely covered with wind-blown sand and unconsolidated material which effectually conceals the underlying formation and precludes determination of structural conditions by ordinary geologic methods. However, geologic examinations in Winkler County, Texas, south of this land, indicate that anticlinal structures already proved productive of oil and gas there, trend northward across southeastern New Mexico and impress the entire area with a prospective value for oil and gas which can not be localized until a large number of adequate drilling tests have been made. Drilling is now in progress in the area and

numerous additional tests are expected to be started within the next ninety days. Under the circumstances outlined, a nonoil and non-gas classification of the land listed is unwarranted and I, accordingly, recommend that Stuart's petition be denied."

On December 27, 1927, the decision of the commissioner denying a nonmineral classification of lands was approved by the Secretary. Thereafter, relator filed a contest affidavit at the local land office against the application of Carlson requesting a hearing to determine the mineral character of the lands in question. A hearing was ordered held, and the register found against the nonmineral contention of the relator. An appeal was taken to the Commissioner of the General Land Office where the decision of the register was affirmed. Thereafter, the Secretary of the Interior approved the decision of the commissioner. Whereupon the present suit was brought in the Supreme Court of the District of Columbia seeking a writ of mandamus to compel the Secretary to give the relator an unrestricted patent for the lands embraced in his original homestead entry.

The Secretary held the relator's final proof on the original entry defective for the reason that it did not show residence on the land as required under the homestead law. Relator made settlement on the land embraced in his original homestead entry in December, 1923, and resided thereon until March, 1924, when he moved his house to his additional entry and has not resided on his original entry since. In other words, he only resided on his original homestead entry about six months and at the time of final proof had no habitable house thereon as required by the statute (37 Stat. 123 [43 USCA § 164]).

██ It is contended by counsel for relator that the residence on the additional entry should be held to constitute residence on the original entry at the time final proof was made. It has been held by the department, and properly so, that residence on either the original or additional entry will be regarded as sufficient in making final proof on either the original or additional entry. But at the time final proof was made on the original entry, three years had not elapsed as required under the statute since making the additional homestead entry, and therefore the right accorded by the department of residence on either had not attached sufficiently to be availed of by relator in proof of residence on his original entry. He might never have completed or made final proof of his additional entry and, in that event, his residence there-

on at the time of final proof on the original entry would amount to nothing more than if he had resided outside of either entry. In other words, his residence on the additional entry could not be made to relate to the original entry until the additional entry was completed for final proof.

This contention is conclusively settled by the rules and regulations of the department. Circular No. 541, page 22, par. (f), provides as follows: "If a person makes entry for a tract contiguous to one originally entered, he is required to show that he still owns and occupies the tract first entered; in submitting proof on the additional filing, he is accorded credit for all residence on either tract." And under the rules relating to the Stock-Raising Homestead Act, Circular No. 523, par. 7, provides: "Where an entry has been made, additional to a pending entry, or to a perfected entry for a tract, still owned by the claimant, the residence may be had on either of the tracts involved for three years after the additional is allowed or becomes allowable."

This clearly establishes the rule of the department that where the residence is located on the lands embraced in the additional entry, until three years have elapsed from the allowance of the additional filing, residence cannot be credited to the original entry.

It follows, therefore, that the mere fact that a habitable house existed upon the additional entry which was not involved in the proof, and which had not been subjected to final proof and was not subject to final proof at that time, was entirely beside the question. The existence of a habitable house upon the additional entry could only be ascertained after the lapse of three years from the allowance of the additional entry or upon final proof. But at the time when proof was offered on the original entry the additional entry was not ripe for final proof.

██ The requirement under section 2291, Revised Statutes, as amended (43 USCA § 164), with respect to the evidence of an existing habitable house upon a homestead, at the time of final proof, is a legal requirement, a condition precedent to the right of the entryman to title, and not a matter which the officials of the Land Office can waive or disregard.

We are not impressed with the contention of counsel for the relator to the effect that his right to an unrestricted patent relates back to the time of his settlement on his original homestead entry on December 1, 1923. Unquestionably, under the ruling of the depart-

ment, when submission of the final proof was made by the entryman upon his additional entry, or three years had elapsed since the allowance of the entry, proof of residence thereon would relate back to his original entry and correct any defect as to nonresidence; but the difficulty that confronts us here is that during the intervening period between relator's settlement on the original homestead entry and the date when the additional entry would be ripe for final proof, when residence could be established, the application for the oil permit contravened.

We are in full accord with the rule announced by Mr. Justice Van Devanter in Wyoming v. United States, 255 U. S. 489, 41 S. Ct. 393, 396, 65 L. Ed. 742, where he quoted from the opinion in Kern Oil Co. v. Clarke, 30 Land Dec. 550, as follows: "That the right to a patent once vested, is, for most purposes, equivalent to a patent issued, and when in fact issued, the patent relates back to the time when the right to it became fixed."

The difficulty with relator's contention is that his right to a patent did not accrue until he had complied with all the requirements of the law, and these requirements were not complied with until he had established legal residence on the land by the lapse of three years from the allowance of the additional homestead entry. That all requirements of the law must be fully complied with before the right to a patent attaches is clearly stated in the quotation from the Kern decision, as follows: "That the conditions with respect to the state or character of the land, as they exist at the time when all the necessary requirements have been complied with by a person seeking title, determine the question whether the land is subject to sale or other disposal, and no change in such conditions, subsequently occurring can impair or in any manner affect his rights."

Applying this rule to the present case, the condition with respect to the state or character of the land was to be determined as of the date when the additional entry became subject to final proof, and when all the requirements, as to the original entry, became completed. On that date the application for an oil and gas permit had intervened and the Director of the Geological Survey had reported the lands as valuable for oil and gas. Relator, therefore, has been deprived of nothing to which he was entitled under the law but has been accorded, by the department, every right to which he is entitled, namely, a restricted patent.

It is urged by relator that having received the register's receipt on December 22, 1926, his right to an unrestricted patent became incontestable on December 22, 1928, by reason of no contest or protest having been made against the validity of his final proof within this two-year period. We cannot subscribe to this theory. The hearings had, in 1927, amounted to a contest of the sufficiency of relator's final proof. Incidental to that, the investigation related especially to the rights of the intervening applicant to a mining permit and as to whether the lands were available for oil and gas within the terms of the leasing act. These proceedings, we think, were in the nature of a contest of plaintiff's right to an unrestricted patent under his final proof and that the bar of the statute, placing a limitation of two years from the date of final proof on the right of the government to challenge relator's right to a patent, by contest or protest, does not apply in this case.

It is apparent that relator's final proof, as to the original entry, was legally defective and that the issue, as to the mineral classification, was a matter falling within the discretion of the Secretary. Whether that discretion was wisely exercised, in the absence of anything indicating arbitrary action on his part, is beside the case. The law placed the duty upon him of deciding the issue and his decision cannot be controlled by mandamus.

The judgment is reversed, and cause remanded for further proceedings not inconsistent with this opinion.