**UNITED STATES**

**v.**

**MESSER OIL CORP.**

Crim. No. 74-23 Erie.

United States District Court,
W. D. Pennsylvania.

Feb. 28, 1975.

Craig R. McKay, Pittsburgh, Pa., Asst. U. S. Atty., for United States.

John G. Gent, Erie, Pa., for Messer Oil Corp.

## OPINION

KNOX, District Judge.

This criminal action is brought under 33 U.S.C.A. § 1321(b)(5), a subsection of the Federal Water Pollution Control Act of 1972. Section 1321(b)(5) provides in relevant part:

> "Any person in charge of a vessel or of an onshore facility or an offshore facility shall, as soon as he has knowledge of any discharge of oil or a hazardous substance from such vessel or facility in violation of paragraph (3) of this subsection, *immediately* notify

*the appropriate* agency of the United States Government of such discharge."

This section of the statute appears straightforward, and its requirements simple, but many hidden questions lurk beneath its surface. Our primary concern here is with the words "appropriate agency"; what agency has been designated "appropriate" and is that designation properly authorized? We also have further questions as to who is a "person in charge" under the act, and how short a time does he have to act in order to give "immediate" notice.

The case was tried non-jury by agreement of the parties. The court has heard arguments, received briefs and further briefs. The latter were required in view of the labyrinth of legislation and administrative regulations, some conflicting, others merely confusing, through which the court has had to wander to determine if this small oil operation in northeastern McKean County, Pennsylvania at Rixford, Pennsylvania, has committed a criminal offense against the United States in not giving immediate notice of an oil spill into a small stream. The stream was a "little unnamed tributary to the south branch of Knapp Creek" which runs into the Allegheny River seven to ten miles east of Rixford.

The spill, caused apparently by pranks of two children in opening a valve, was discovered on the evening of May 27, 1973, during a heavy rain storm.

The defendant has moved to dismiss the indictment on the ground that the statute and regulations thereunder are impermissibly vague and in violation of the due process clause of the constitution. The defendant contends that at the time of the oil spill no agency had been duly named as the "appropriate agency" to receive notice. Alternatively, the defendant contends that if any agency is the "appropriate agency" to receive notice, it is the Coast Guard, and the information charging failure to notify the Environmental Protection Agency (EPA) is therefore insufficient. Because the motion to dismiss was not timely filed in accordance with Local Rule 24 and Rule 12 of the Federal Rules of Civil Procedure, argument on the same was heard immediately prior to the commencement of trial, and the matters presented were taken under advisement. We therefore have under consideration at this time both the motion to dismiss and the merits of the case.

## I. *Legislation and Regulations.*

The Federal Water Pollution Control Act, 33 U.S.C.A. §§ 1251–1376 [formerly 33 U.S.C.A. §§ 1151–1165] was originally enacted by Act June 30, 1948, c. 758, 62 Stat. 1155 and has been amended numerous times. [See note on "Codification" following 33 U.S.C.A. § 1251]. Pub.L. 92–500, passed October 18, 1972, comprehensively amended, reorganized and expanded the act. The forerunner to 33 U.S.C.A. § 1321(b)(5), the section under which this criminal action is brought, is found at 33 U.S.C.A. § 1161(b)(4) [June 30, 1948, c. 758, § 11, as added April 3, 1970, Pub.L. 91–224, Title I, § 102, 84 Stat. 91.] That provision is identical to 33 U.S.C.A. § 1321(b)(5), except that it applied only to oil spills and not to discharges of other hazardous substances.

Executive Order 11548, issued July 20, 1970, pursuant to the 1970 Act, provides in part:

"Sec. 6. *Agency to Receive Notices of Discharges of Oil or Hazardous Substances.*

The Coast Guard is hereby designated the 'appropriate agency' for the purpose of receiving the notice of discharge of oil required by subsection (b)(4) of section 11 of the Act. . . . The Commandant of the Coast Guard shall issue regulations implementing this designation.

Sec. 7. *Redelegation authority.*

Secretaries of Departments and heads of agencies are hereby authorized to redelegate within their respective departments or agencies the responsibilities and authority delegated to them

by this order, subject to the requirements of 3 U.S.C. 301.

Sec. 8. *Regulations.*

Authority to carry out any of the foregoing responsibilities includes the authority to issue necessary implementing regulations."

In determining whether this order is sufficiently broad to permit the Coast Guard to enlist the aid of the EPA in receiving notice, we must also consider 14 U.S.C.A. § 141(b) which provides:

"The Coast Guard, with the consent of the head of the agency concerned, may avail itself of such officers and employees, advice, information, and facilities of any Federal agency, State, Territory, possession, or political subdivision thereof, or the District of Columbia as may be helpful in the performance of its duties. . . ."
Aug. 4, 1949, c. 393, § 1, 63 Stat. 505.

Following Executive Order 11548 defining appropriate agency to receive notice of oil discharges as being the Coast Guard, this agency issued a regulation (33 CFR § 153) providing for notice of discharges of oil. This regulation was advertised November 21, 1970, and provided in Section 153.105 for notice to various Coast Guard officers as follows:

"(a) Any person in charge of a vessel or an onshore or offshore facility, as soon as he has knowledge of any discharge of oil from the vessel or facility into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone in harmful quantities as determined in accordance with the provisions of 18 CFR Part 610, shall give immediate notice of such discharge by the most expeditious means available which includes the use, in order of priority, of telephone, radiotelephone, radio telecommunications, or other means of rapid communication.

(b) The notice required by paragraph (a) of this section shall be given to one of the following officials:

(1) The Commanding Officer or Officer-in-Charge of any Coast Guard unit in the vicinity of the discharge; . . ."

The regulation further provided for notice to the Commander of the Coast Guard district in which the discharge occurred, listed as Region III "Pennsylvania (East Coast) 3d; Middle Atlantic (Lake Side) 9th."

Further in the regulation was a table showing telephone numbers for Coast Guard duty offices. Closest to McKean County, Pennsylvania, is the Cleveland Coast Guard office as to which the number of the duty officer was given on the Cleveland area exchange. The only other possibly relevant one is the third coast guard district duty officer located at Governor's Island, New York City, whose phone number was also given.

The court will take judicial notice that there are coast guard offices at Cleveland, Ohio (approximately 175 miles from Rixford, Pennsylvania); Erie, Pennsylvania (approximately 125 miles); Buffalo, New York (approximately 100 miles); and Sewickley, Pennsylvania, on the Ohio River (approximately 150 miles).

Further in Section 153–105(c), it is provided that if notice cannot be given to the officials designated in paragraph (b) then notice may be given to various persons including "the regional director of the Federal Water Quality Administration for the region in which the discharge occurs". The government further points out that on December 2, 1970, under Reorganization Plan Number 3 of 1970, the Environmental Protection Agency was established and under Section 2 of that Plan, all functions formerly vested by law in the Federal Water Quality Administration were transferred to the EPA. On the face of things, this would indicate that failure to notify the EPA was properly charged as an offense.

This, however, is not all there is to this case. Pursuing the trail further into the thickening thicket, we find that

on November 25, 1971, the Environmental Protection Agency handed the ball back to the Coast Guard. On that date 40 CFR part 110.9 was enacted which provides:

"Any person in charge of any vessel or onshore or offshore facility shall, as soon as he has knowledge of any discharge of oil from such vessel or facility in violation of § 110.5 of this part, immediately notify the United States Coast Guard of such discharge in accordance with such procedures as the Secretary of Transportation may prescribe."

■ Section 110.9 the court holds effectively re-designated the United States Coast Guard as the agency to notify. As the court understands the case, this was where matters stood on the date of the spill in question on May 27, 1973.

■ It should further be noted that the government concedes that the regional oil and hazardous material pollutions contingency plan referred to in 33 CFR 153.105(b)(3) was never published in the Federal Register, and if violation of such a contingency plan is to be used as a basis for a criminal prosecution, the court rules it at least should have been published in the Register and that it is no answer to say as does the government that the defendant in this case could have walked into the Coast Guard office at either Governor's Island or one of the places along Lake Erie and ascertained from the plan whom to call and what telephone number was to be used.

On October 18, 1972, Public Law 92–500 was passed containing the Section 33 U.S.C. § 1321(b)(5) under which this prosecution was brought. Under 33 U.S.C. § 1321(c)(2), the President was to prepare within 60 days a national contingency plan for removal of oil and other hazardous substances including in sub-paragraph (E), a system of surveillance and notice to insure earliest possible notice of oil discharge. However, it was not until August 3, 1973, that Executive Order No. 11735 was issued which in Section 7 again designated the coast

guard as the appropriate agency for receiving notice of oil discharges. This, however, was the situation on August 3, 1973. Our inquiry is limited to the narrow question of how did the matter stand on May 27, 1973, the date of the spill in question. On that date, under Section 4 of Public Law 92–500 in subsection (b), there was provision made as follows:

"(b) All rules, regulations, orders, determinations, contracts, certifications, authorizations, delegations, or other actions duly issued, made, or taken by or pursuant to the Federal Water Pollution Control Act as in effect immediately prior to the date of enactment of this Act, and pertaining to any functions, powers, requirements, and duties under the Federal Water Pollution Control Act as in effect immediately prior to the date of enactment of this Act, shall continue in full force and effect after the date of enactment of this Act until modified or rescinded in accordance with the Federal Water Pollution Control Act as amended by this Act."

The savings clause left intact the designation of the coast guard previously made to receive notices of oil discharges.

II. *The Factual Situation In This Case.*

The information in this case reads as follows:

"On or about the 27th day of May, 1973, in McKean County, in the Western District of Pennsylvania, the defendant, Messer Oil Company, a New York Corporation, being the person in charge of a certain onshore oil storage facility, to wit, the Messer Oil Company oil storage tank facility at or about Rixford, Pennsylvania, adjacent to a tributary of the South Branch of Knapps Creek, and having knowledge of a discharge of oil from such facility in violation of Section 1321(b)(3), *did fail to notify the United States Environmental Protection Agency of such discharge.*"

■ It is true that regulations and Executive Orders when duly published

have the force of law. See Wolfson v. United States, 492 F.2d 1386 (Court of Claims 1974); Farmer v. Philadelphia Electric Company, 329 F.2d 3 (3d Cir. 1964).

This is in accordance with 44 U.S.C. § 1507 providing for publication in the Federal Register, which section reads as follows:

"A document required by section 1505(a) of this title to be published in the Federal Register is not valid as against a person who has not had actual knowledge of it until the duplicate originals or certified copies of the document have been filed with the Office of the Federal Register and a copy made available for public inspecton as provided by section 1503 of this title. Unless otherwise specifically provided by statute, filing of a document, required or authorized to be published by section 1505 of this title, except in cases where notice by publication is insufficient in law, is sufficient to give notice of the contents of the documents to a person subject to or affected by it."

 It is also true as argued by the government that actual knowledge of a regulation is sufficient even if it has not been formally published. See Kessler v. F.C.C., 117 U.S.App.D.C. 130, 326 F.2d 673 (1963); United States v. Aarons, 310 F.2d 341 (2d Cir. 1972). In the instant case, a representative of the Pennsylvania Fish Commission had been notified of the oil spill, and he testified that he told Mr. Eberl, the person on the ground in charge of the oil facility in which the valves had been turned by the boys, to make a report to the Pennsylvania Environmental Resources Department and also to the EPA and the Coast Guard. See Page 29 of Transcript. At page 31, he reiterated these instructions to Eberl. This was Sunday night, May 27. Monday, May 28, was Memorial Day, a legal holiday. Eberl at page 102 admitted that he had been told to notify the "environment too" not specifying what environment was to be notified. He stated that Williams did not tell him what telephone number to call or how quickly to call them.

On the morning of Memorial Day, Mr. Berry, President of Messer Oil Corporation, with offices in Olean, New York, approximately 15 miles away, testified he received a call from Eberl that an oil spill had occurred. He stated he did not know what office to call and on the morning of May 28, he received a call about 11:00 a. m. from the EPA in Philadelphia. The defendant Messer Oil Corporation is a relatively small operation producing 25 barrels a day in the Bradford, Pennsylvania field and approximately 35 barrels a day in a field in Ohio. Berry claimed he was not aware of the role of the Federal government with respect to oil spills on small inland streams or the requirement to notify either the EPA or the Coast Guard. On page 91, this witness admitted on cross examination that he had been advised by Mr. Eberl to report the matter to the federal authorities.

 We will assume arguendo under the circumstances of this case, despite the problems posed by a spill during a flood on Memorial Day weekend, that failure to notify the federal authorities prior to 11:00 a. m., on May 29 was not giving immediate notification as required by the act. Obviously the word "immediate" must be interpreted in the light of the circumstances of each particular case. The court, however, is unable to find beyond a reasonable doubt that Eberl, the person in charge, or Berry, the President of Messer Oil Corporation, had actual knowledge of any regulation requiring him to notify either the EPA or the Coast Guard of a spill of this type. Nevertheless, if it was clear there had been a violation of the regulations, we would not hesitate to find them guilty in view of the rule that publication in the Federal Register is sufficient notice to those who would be affected thereby, in this case persons in charge of onshore oil facilities.

The basic difficulty with this case, however, is that the information charges failure to notify the United States EPA.

We have previously pointed out that at the time of the alleged offense, to wit, on May 27 or 29, 1973, there was no regulation in effect requiring notice to be given to the EPA. Rather the only regulation in effect was that requiring a notice be given to the Coast Guard at what location and to what telephone number we could not expect the defendants to know.

In the government's brief, page 6, it is stated:

"If this court should hold that the EPA was not an appropriate agency to receive notice of the subject oil spill on behalf of the coast guard, then the United States can see that the information filed in this case would be insufficient."

The position of the defendant is well stated in its supplemental brief:

"How can the EPA require notificatinon to a Philadelphia office when in regulations issued in November 1971, the EPA rescinded whatever authority it had previously asserted and stated uncategorically that the coast guard was the appropriate agency to notify?"

At the present time, there is no motion to amend the information and it is doubtful whether the same should be allowed under Rule 7(e) of the Federal Rules of Criminal Procedure inasmuch as it well may be that the defendant is prejudiced by defending against a charge of failure to notify the EPA.

We therefore hold that the information in this case is defective in alleging failure to notify the EPA at a time when notice to the EPA was not required by this welter of government rules and regulations pertaining to the matter. Certainly, if we found the defendant guilty on this charge, it is doubtful that the plea of once in jeopardy could be offered if an information was later filed alleging failure to notify the Coast Guard. Since there was no requirement at the time to notify the EPA, the information might just as well charge failure to notify the Department of State or the United States Ambassador to Great Britain insofar as charging an offense goes. In light of the above, we deem it unnecessary to consider defendant's arguments, that the whole hodgepodge of regulations in this case is so confused and inconsistent as to afford no basis for a criminal prosecution because of lack of due process, although it might form some basis for a civil penalty.

The above opinion contains findings of fact and conclusions of law in compliance with Rule 23(c).

### ORDER

And now, to wit, February 28, 1975, after non-jury trial before the undersigned, and after careful consideration of the briefs and arguments of the parties, for reasons set forth in the foregoing opinion,

It is ordered that the defendant be found not guilty of the offense charged in the information, to wit, failure "to notify the United States Environmental Protection Agency of such discharge" and the defendant is discharged and released from further liability upon its recognizance.

In the light of the above finding of not guilty, it is ordered that the Motion to Dismiss filed by defendant be and the same hereby is denied as moot.