STATE of Alaska,
Appellant/Cross-Appellee,

v.

ALASKA LAND TITLE ASSOCIATION;
Security Title and Trust Company of
Alaska; Alaska Title Guaranty Compa-
ny; Brokers Title Company; Lawyers
Title Insurance Agency, Inc.; Safeco Ti-
tle Agency, Inc.; Fairbanks Title Agen-
cy; Valley Title and Escrow Company;
First American Title Insurance Compa-
ny; Transamerica Title Insurance Com-
pany; Hansen Associates, an Alaska
Limited Partnership; Richard L. Boy-
sen; and Jack White Company, Appel-
lees/Cross-Appellants,

and

Theodore M. Pease, Jr., and Claire V.
Pease, Appellees.

TRANSAMERICA TITLE INSURANCE
COMPANY, Appellant,

v.

Theodore M. PEASE, Jr., and Claire V.
Pease, Appellees.

Nos. 5407, 5408.

Supreme Court of Alaska.

May 27, 1983.

Appellees and Cross-Appellants Petition
for Rehearing Denied July 8, 1983.

Appellants and Cross-Appellees Petition
for Rehearing Granted July 8, 1983.

As Amended July 8, 1983.

Jack McGee, Asst. Atty. Gen., Wilson Condon, Atty. Gen., Juneau, for appellant/cross-appellee.

David A. Devine and Michael W. Price, Groh, Eggers, Robinson, Price & Johnson, Anchorage, for appellees/cross-appellants.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This is an action for a declaratory judgment brought by an association representing various title insurance companies, individual title insurance companies, and several landowners against the State of Alaska, the Municipality of Anchorage, and Theo-

dore and Clair Pease. Nine claims for relief were presented.

The first claim sought a determination that a title insurance policy issued by Transamerica Title Insurance Company to the Peases excluded from coverage any rights-of-way created pursuant to certain Interior Department Orders, namely, Public Land Orders 601, 757, 1613, and Departmental Order 2665.

The second claim for relief sought a declaration that claimed easements for "local roads" as defined in DO 2665 could not be used by the State or municipal governments because of the Alaska Right of Way Act of 1966.

The third related to "feeder roads" as defined in PLO 601 and DO 2665, seeking a declaration that rights-of-way for such roads could not be utilized because of the Alaska Right of Way Act of 1966.

The fourth claim for relief concerned property owned by plaintiff Hansen Associates along the Seward Highway. It alleged that the original patentee had made a homestead entry prior to the effective date of the first order involved, PLO 601, and sought a declaration that no through road easement under PLO 601 or any of its successors could be claimed.

The fifth claim for relief referred to a quitclaim deed given on or about April 7, 1959, conveying the United States' interests in the highways in Alaska to the State. The deed was recorded October 2, 1969. This claim sought a declaration that the quitclaim deed would have no effect on bona fide purchasers for value who purchased and recorded prior to the State's recording of the quitclaim deed.

The sixth claim for relief alleged that the failure of the United States or the State to record PLOs 601, 757, and 1613 and DO 2665 in a State recording office rendered any easements that might otherwise have been created by those orders void as against subsequent innocent purchasers for value who first duly recorded their interests.

The seventh claim alleged a theory of estoppel against the State and Municipality,

claiming that for twenty years they had allowed property owners to develop property on which they now claim an easement pursuant to PLOs 601, 757, and 1613 and DO 2665, that no notice of such claims had been given, and that individual property owners would be prejudiced if the State and the Municipality were now permitted to utilize such easements.

The eighth claim sought a declaration that no easement could be taken by the State or the Municipality for a local, feeder, or through road under the authority of PLOs 601, 757, and 1613 or DO 2665 because of the Right of Way Act of 1966.

The ninth claim alleged that prior to the quit-claim deed from the United States to the State of April 7, 1959, the United States had patented to private landowners property which included rights-of-way now claimed by the State. A declaration was sought that these patents were conclusive as against the State and that the patents could not be vacated or annulled because of the six year statute of limitations set forth in 43 U.S.C. § 1166.

The Peases cross-claimed against the State, alleging that the State unlawfully claimed a 50 foot road easement along the south boundary of their property whereas only a 33 foot easement was described in the patent from the United States to their predecessor-in-interest. They sought just compensation for the 17 foot difference in the approximate sum of $3,000.00 plus interest from the date of taking. The Peases also counterclaimed against Transamerica, alleging that if the State was entitled to a full 50 foot right-of-way Transamerica would be obliged under the title policy to compensate them for the value of the 17 foot strip.

Before answering, the State filed a motion for a more definite statement requesting legal descriptions of property across which the complaint alleged that the State was claiming rights-of-way. In response, the plaintiffs described the property owned by Hansen Associates along the Seward Highway, with respect to the fourth claim for relief, and property owned by plaintiff

Richard L. Boysen which also lay along the Seward Highway, with respect to the seventh claim. The State then answered the complaint, placing in controversy all the legal theories of the plaintiffs.

The State, all plaintiffs, and the Peases moved for summary judgment as to all claims. The court denied the State's motion, granted the plaintiffs' motion as to the second, third, and eighth claims, and granted the Peases' motion as to their cross-claim and counterclaim. Following entry of a memorandum of decision reflecting these actions the court entered a declaratory judgment containing four numbered paragraphs, which proceed from the abstract to the particular. They are:

1. The State of Alaska and the Municipality of Anchorage are claiming highway easements for local, feeder, and through roads in excess of easement widths specified in patents issued to Alaska property owners. Said easements are claimed by the State or the Municipality pursuant to authority derived from Public Land Orders 601, 757, 1613 and Department Order 2665. For the reasons set forth in the Memorandum of Decision dated May 7, 1980, the court hereby awards Plaintiffs a summary judgment against the State of Alaska and the Municipality of Anchorage declaring that the State and the Municipality may not take or utilize property for local, feeder, or through roads in excess of the widths set forth in the patents to the affected properties without just compensation to the owners of the affected properties unless such local, feeder, or through roads were occupied and staked by the State of Alaska or the Municipality of Anchorage prior to April 14, 1966, or were specifically designated in the patents to the affected real properties.

2. The Plaintiffs Hanson [sic] Associates and Richard L. Boysen are hereby awarded a summary judgment against the State of Alaska and the Municipality of Anchorage declaring that neither the State nor the Municipality can take any portion of their properties for the through road presently known as the Old Seward Highway which is in excess of the easement widths specified in their respective patents without just compensation.

3. The Defendants Pease are hereby awarded a summary judgment on their cross-claim against the State of Alaska declaring that the State may not take or utilize any portion of the Peases' land for the local road presently known as Rabbit Creek Road which is in excess of the 33-foot easement width specified in the patent to the Peases' property without just compensation. The Peases' property is described as Lot 191, Section 33, Township 12 North, Range 3 West, Seward Meridian, Anchorage Recording District, Third Judicial District, State of Alaska.

4. The Defendants Pease are hereby awarded a summary judgment on their counterclaim against Transamerica Title Insurance Company declaring that Transamerica is liable under its title insurance policy issued to the Peases for the taking by the State of Alaska of a 17-foot strip of land for the local road known as Rabbit Creek Road, which 17-foot strip of land was in excess of a 33-foot easement specified in the Peases' patent. However, since the State of Alaska must compensate the Peases for the taking or utilization of said additional 17-foot easement, the Peases shall collect just compensation from the State of Alaska, and upon receipt of said just compensation the Peases shall not be entitled to recover damages from Transamerica Title Insurance Company for said taking of the additional 17-foot strip of property.

The State has appealed from this judgment. The plaintiffs have cross-appealed, claiming that the superior court should have granted them judgment on their fourth, fifth, sixth, seventh, and ninth claims for relief. In addition, Transamerica Title has appealed from the judgment against it in favor of the Peases.

I

THE STATE'S APPEAL AS TO THE PEASES' PROPERTY

We turn first to the appeal of the State as it relates to the Peases' property.

The patent to the 2.5 acre Pease parcel was issued on October 4, 1955, pursuant to the Small Tract Act of 1938, 43 U.S.C. §§ 682a–682e (1938), *repealed by* Pub.L. No. 94–579, Title VII, § 702 (1976). The lot was leased to the Peases' predecessor-in-interest on May 1, 1953. The patent contains two relevant reservations. One is a blanket reservation for roads "constructed or to be constructed by or under authority of the United States or by any State created out of the Territory of Alaska, . . ." This reservation was made pursuant to 48 U.S.C. § 321d, ch. 313, 61 Stat. 418 (1947), *repealed by* Pub.L. No. 86–70, § 21(d)(7), 73 Stat. 146 (1959), which provides in part:

> In all patents for lands hereafter taken up, entered, or located in the Territory of Alaska, and in all deeds by the United States hereafter conveying any lands to which it may have reacquired title in said Territory not included within the limits of any organized municipality, there shall be expressed that there is reserved, from the lands described in said patent or deed, a right-of-way thereon for roads, roadways, highways, tramways, trails, bridges, and appurtenant structures constructed or to be constructed by or under the authority of the United States or of any State created out of the Territory of Alaska. . . .

The other relevant reservation in the patent reserves a 33 foot right-of-way for roadway purposes along the south and east boundaries of the tract. Rabbit Creek Road lies on the south boundary of the Peases' property. As this case has been presented all parties have assumed that Rabbit Creek Road was in existence as a local road at all times relevant to the various orders hereafter discussed. We make the same assumption.

In 1978 the State widened Rabbit Creek Road from 66 feet to 100 feet. The road occupied a 33 foot strip on the Peases' property before widening and a 50 foot strip after widening. The State claimed a 50 foot easement on each side of the center line of Rabbit Creek Road, citing PLOs 601 [1] and 757,[2] and DO 2665 [3] as authority for widening the road without compensating the Peases for taking the extra 17 feet.

PLO 601, effective August 10, 1949, withdrew "the public lands in Alaska lying within . . . 150 feet on each side of the center line of all . . . through roads, 100 feet on each side of the center line of all feeder roads, and 50 feet on each side of the center line of all local roads, . . . from all forms of appropriation under the public land laws, . . ." and reserved them "for highway purposes." [4]

The Secretary of the Interior promulgated PLO 757 and DO 2665 on October 19, 1951. 16 Fed.Reg. 10,749, 10,752 (1951). DO 2665 was filed first. *Id.* at 10,752. It established, among other things, easements, rather than withdrawals, of 50 feet on each

---

1. 14 Fed.Reg. 5048 (1949).

2. 16 Fed.Reg. 10,749 (1951).

3. 16 Fed.Reg. 10,752 (1951).

4. 14 Fed.Reg. 5048 (1949). The quoted language is from the sixth paragraph of PLO 601. The sixth paragraph in full states:

 > Subject to valid existing rights and to existing surveys and withdrawals for other than highway purposes, the public lands in Alaska lying within 300 feet on each side of the center line of the Alaska Highway, 150 feet on each side of the center line of all other through roads, 100 feet on each side of the center line of all feeder roads, and 50 feet on each side of the center line of all local roads, in accordance with the following classifications, are hereby withdrawn from all forms

of appropriation under the public land laws, including the mining and mineral-leasing laws, and reserved for highway purposes:

Through Roads

Alaska Highway, Richardson Highway, Glenn Highway, Haines Highway, Tok Cut-Off.

Feeder Roads

Steese Highway, Elliott Highway, McKinley Park Road, Anchorage-Potter-Indian Road, Edgerton Cut-Off, Tok Eagle Road, Ruby-Long-Poorman Road, Nome-Solomon Road, Kenai Lake-Homer Road, Fairbanks-College Road, Anchorage-Lake Spenard Road, Circle Hot Springs Road.

Local Roads

All roads not classified above as Through Roads or Feeder Roads, established or maintained under the jurisdiction of the Secretary of the Interior.

*Id.* at 5048–49 (1949).

side of the center line of each local road and of 100 feet as to each feeder road.[5] PLO 757 amended the sixth paragraph of PLO 601, see note 4 supra, increasing the withdrawal for the Seward Highway [the Anchorage-Potter-Indian Road in PLO 601] from 100 feet to 150 feet on each side of the center line. 16 Fed.Reg. 10,749, 10,750 (1951). PLO 757 repealed the general withdrawal for local and feeder roads contained in the sixth paragraph of PLO 601, thus effecting a revocation of the 601 withdrawals as to them. However, PLO 757 acknowledged that DO 2665 had already established easements as to feeder and local roads and did not purport to revoke them. The final paragraph of PLO 757 states:

> Easements having been established on the lands released by this order, such lands are not open to appropriation under the public land laws. . . .[6]

5. 16 Fed.Reg. 10,752 (1951). DO 2665 provides:

Rights-of-Way for Highways in Alaska

Section 1. *Purpose.* (a) The purpose of this order is to (1) fix the width of all public highways in Alaska established or maintained under the jurisdiction of the Secretary of the Interior and (2) prescribe a uniform procedure for the establishment of rights-of-way or easements over or across the public lands for such highways. Authority for these actions is contained in section 2 of the act of June 30, 1932 (47 Stat. 446, 48 U.S.C. 321a).

Section 2. *Width of public highways.* (a) The width of the public highways in Alaska shall be as follows:

(1) For through roads: The Alaska Highway shall extend 300 feet on each side of the center line thereof. The Richardson Highway, Glenn Highway, Haines Highway, Seward-Anchorage Highway, Anchorage-Lake Spenard Highway and Fairbanks-College Highway shall extend 150 feet on each side of the center line thereof.

(2) For feeder roads: Abbott Road (Kodiak Island), Edgerton Cutoff, Elliott Highway, Seward Peninsula Tram road, Steese Highway, Sterling Highway, Taylor Highway, Northway Junction to Airport Road, Palmer to Matanuska to Wasilla Junction Road, Palmer to Finger Lake to Wasilla Road, Glenn Highway Junction to Fishhook Junction to Wasilla to Knik Road, Slana to Nabesna Road, Kenai Junction to Kenai Road, University to Ester Road, Central to Circle Hot Springs to Portage Creek Road, Manley Hot Springs to Eureka Road, North Park Boundary to Kantishna Road, Paxson to McKinley Park Road, Sterling Landing to Ophir Road, Iditarod to Flat Road, Dillingham to Wood River Road, Ruby to Long to Poorman Road, Nome to Council Road and Nome to Bessie Road shall each extend 100 feet on each side of the center line thereof.

(3) For local roads: All public roads not classified as through roads or feeder roads shall extend 50 feet on each side of the center line thereof.

Section 3. *Establishment of rights-of-way or easements.* (a) A reservation for highway purposes covering the lands embraced in the through roads mentioned in section 2 of this order was made by Public Land Order No. 601 of August 10, 1949, as amended by Public Land Order No. 757 of October 16, 1951. That order operates as a complete segregation of the land from all forms of appropriation under the public-land laws, including the mining and the mineral leasing laws.

(b) A right-of-way or easement for highway purposes covering the lands embraced in the feeder roads and the local roads equal in extent to the width of such roads as established in section 2 of this order, is hereby established for such roads over and across the public lands.

(c) The reservation mentioned in paragraph (a) and the rights-of-way or easements mentioned in paragraph (b) will attach as to all new construction involving public roads in Alaska when the survey stakes have been set on the ground and notices have been posted at appropriate points along the route of the new construction specifying the type and width of the roads.

Section 4. *Road maps to be filed in proper Land Office.* Maps of all public roads in Alaska heretofore or hereafter constructed showing the location of the roads, together with appropriate plans and specifications, will be filed by the Alaska Road Commission in the proper Land Office at the earliest possible date for the information of the public. *Id.*

6. 16 Fed.Reg. 10,749, 10,750 (1951). The text of PLO 757 so far as it is relevant here states:

The sixth paragraph of Public Land Order No. 601 of August 10, 1949, reserving public lands for highway purposes, commencing with the words "Subject to valid existing rights", is hereby amended to read as follows:

Subject to valid existing rights and to existing surveys and withdrawals for other than highway purposes and public lands in Alaska lying within . . . 150 feet on each side of the center line of the . . . Seward-Anchorage Highway . . . are hereby withdrawn from all forms of appropriation under the public-land laws including the mining and mineral-leasing laws, and reserved for highway purposes.

Easements having been established on the lands released by this order, such lands are

Thus one effect of PLO 757 and DO 2665 was to substitute easements for the withdrawals made in PLO 601 as to local and feeder roads.

The State's claim to the full 50 feet, from the center line, of Rabbit Creek Road is in all relevant respects identical to the claim that it successfully asserted in *State, Department of Highways v. Green,* 586 P.2d 595 (Alaska 1978). In *Green,* as in the Peases' claim, the patents were issued by the United States under the Small Tract Act and contained blanket roadway easements under 48 U.S.C. § 321d as well as specific 33 foot easements. The local road in question in both cases was built before DO 2665 was promulgated, and the lease as well as the patent was issued after promulgation of DO 2665. We held in *Green* that DO 2665 was issued pursuant to 48 U.S.C. § 321a, as distinct from 48 U.S.C. § 321d; that DO 2665 was applicable to patents issued under the Small Tract Act; and that

the 50 foot right-of-way established by DO 2665 was effective even though only a 33 foot right-of-way was expressed in the patent. 586 P.2d at 600–03.

The superior court reasoned that *Green* was not controlling because of the provisions of the Right-of-Way Act of 1966, ch. 92 S.L.A. 1966.[7] Sections 2 and 3 contain the operative provisions of the Right-of-Way Act of 1966. Section 2 precludes the State from taking "privately owned property by the election or exercise of a reservation to the state acquired under [48 U.S.C. § 321d]," and section 3 provides that the Act shall not be construed to divest the State of "any right-of-way or other interest in real property which was taken by the state, before the effective date of this Act, by the election or exercise of its right to take property through a reservation acquired under [48 U.S.C. § 321d]." The effective date of the Right-of-Way Act of 1966 was April 14, 1966.

not open to appropriation under the public-land laws except as a part of a legal subdivision, if surveyed, or an adjacent area, if unsurveyed, and subject to the pertinent easement.

*Id.* at 10,749–50.

7. The Right-of-Way Act of 1966 states:

Section 1. PURPOSE. This Act is intended to alleviate the economic hardship and physical and mental distress occasioned by the taking of land, by the State of Alaska, for which no compensation is paid to the persons holding title to the land. This practice has resulted in financial difficulties and the deprivation of peace of mind regarding the security of one's possessions to many citizens of the State of Alaska, and which, if not curtailed by law, will continue to adversely affect citizens of this state. Those persons who hold title to land under a deed or patent which contains a reservation to the state by virtue of the Act of June 30, 1932, ch. 320, sec. 5, as added July 24, 1947, ch. 313, 61 Stat. 418, are subject to the hazard of having the State of Alaska take their property without compensation because all patents or deeds containing the reservation required by that federal Act reserve to the United States, or the state created out of the Territory of Alaska, a right-of-way for roads, roadways, tramways, trails, bridges, and appurtenant structures either constructed or to be constructed. Except for this reservation the State of Alaska, under the Alaska constitution and the constitution of the United States,

would be required to pay just compensation for any land taken for a right-of-way. It is declared to be the purpose of this Act to place persons with land so encumbered on a basis of equality with all other property holders in the State of Alaska, thereby preventing the taking of property without payment of just compensation as provided by law, and in the manner provided by law.

Section 2. TAKING OF PROPERTY UNDER RESERVATION VOID. After the effective date of this Act, no agency of the state may take privately-owned property by the election or exercise of a reservation to the state acquired under the Act of June 30, 1932, ch. 320, sec. 5, as added July 24, 1947, ch. 313, 61 Stat. 418, and taking of property after the effective date of this Act by the election or exercise of a reservation to the state under that federal Act is void.

Section 3. PROSPECTIVE APPLICATION. This Act shall not be construed to divest the state of, or to require compensation by the state for, any right-of-way or other interest in real property which was taken by the state, before the effective date of this Act, by the election or exercise of its right to take property through a reservation acquired under the Act of June 30, 1932, ch. 320, sec. 5, as added July 24, 1947, ch. 313, 61 Stat. 418.

Section 4. SHORT TITLE. This Act may be cited as the Right-Of-Way Act of 1966.

Section 5. EFFECTIVE DATE. This Act takes effect on the day after its passage and approval or on the day it becomes law without such approval.

■ The court erred in applying the Right-of-Way Act of 1966 to the Pease case. It is applicable only to interests taken by the State under a blanket reservation created pursuant to 48 U.S.C. § 321d. We held in *Green* that easements established by DO 2665 were established under the authority of section 321a, not section 321d.[8] *Green,* 586 P.2d at 600 n. 17. Further, we held in *State, Department of Highways v. Crosby,* 410 P.2d 724 (Alaska 1966) that § 321d did not apply at all to patents issued under the Small Tract Act. *Id.* at 728.

■ The superior court also concluded in its Memorandum of Decision that the easement which otherwise would have been created under DO 2665 on Rabbit Creek Road did not come into being "until the right-of-way was staked by the terms of DO 2665." This statement refers to subsection 3(c) of DO 2665, which provides:

> The reservation mentioned in paragraph (a) and the rights-of-way or easements mentioned in paragraph (b) will attach as to all new construction involving public roads in Alaska when the survey stakes have been set on the ground and notices have been posted at appropri-

ate points along the route of the new construction specifying the type and width of the roads.[9]

The superior court's conclusion that the staking requirement of section 3(c) was applicable to Rabbit Creek Road is erroneous. Section 3(c) by its express terms only applies to new construction. Rabbit Creek Road was an existing road when the order was promulgated. As to existing roads, subsection 3(b) of the order establishes a 50 foot easement in the present, rather than the future, tense and contains no call for additional action in order to fix the easement. It states:

> A right-of-way or easement for highway purposes covering the lands embraced in the . . . local roads equal in extent to the width of such roads as established in section 2 of this order, *is hereby established* for such roads over and across the public lands.

16 Fed.Reg. 10,752 (1951) (emphasis added). Subsection (3) of section 2 of DO 2665 set the width of local roads at 50 feet on each side of the center line. Thus, these two sections of DO 2665 established a 50 foot easement for Rabbit Creek Road.

---

**8.** A memorandum from the Chief Counsel of the Bureau of Land Management to the Director of the Bureau, dated February 7, 1951, explains well the extent of the authority granted to the Secretary of the Interior under § 321a. The memorandum states in part:

> Prior to the issuance of Public Land Order No. 601 . . ., nearly all public roads in Alaska were protected only by easements. Right-of-way easements were acquired under section 2477 of the Revised Statutes (43 U.S.C. sec. 932) by the construction of roads. This section granted a right-of-way for the construction of highways over public lands not reserved for public uses.
>
> Section 2 of the Act of January 27, 1905 (33 Stat. 616), incorporated with amendments into 48 U.S.C. secs. 321–323, established a Board of Road Commissioners in the then Territory of Alaska to function under the jurisdiction of the Secretary of War. This section provided:
>
> "Sec. 2. * * * The said board shall have the power, and it shall be their duty, upon their own motion or upon petition, to locate, lay out, construct, and maintain wagon roads and pack trails * * *. The said board shall prepare maps, plans, and specifications of

> every road or trail they may locate and lay out, * * *."
>
> Section 3 of the Act of August 24, 1912 (37 Stat. 512, 48 U.S.C. secs. 23 and 24), under which Alaska was organized as a Territory, provided that the authority of the legislature of the Territory should not extend to certain statutes of the United States including the Act of January 27, 1905, *supra,* and the several acts amendatory thereof.
>
> Section 2 of the Act of June 30, 1932 (47 Stat. 446, 48 U.S.C. sec. 321a), provides:
>
> "Sec. 2. The Secretary of the Interior shall execute or cause to be executed all laws pertaining to the construction and maintenance of roads and trails and other works in Alaska heretofore administered by said board of road commissioners under the direction of the Secretary of War; * * *."
>
> The authority of the Secretary of the Interior conferred by the above-cited acts to "locate, lay out, construct and maintain" public roads in Alaska clearly implies the right to fix the width of the roads. This width is not fixed by any statute.

**9.** 16 Fed.Reg. 10,752 (1951). For the full text of DO 2665, *see* note 5 *supra.*

The history of the promulgation of DO 2665 also demonstrates that the staking requirement applies only to new construction, not existing roads. In territorial days road easements were created across public land under 43 U.S.C. § 932, *repealed by* Pub.L. No. 94–579, Title VII, § 706(a) (1976), a statute remarkable for its brevity, which provided:

> The right-of-way for the construction of highways over public lands, not reserved for public uses, is hereby granted.

This blanket grant had to be accepted. A common method of acceptance was the building of a road by a public authority.[10] But other methods of acceptance were also recognized. As we stated in *Hamerly v. Denton*, 359 P.2d 121 (Alaska 1961) with respect to 43 U.S.C. § 932:

> [B]efore a highway may be created, there must be either some positive act on the part of the appropriate public authorities of the state, clearly manifesting an intention to accept a grant, or there must be public user for such a period of time and under such conditions as to prove that the grant has been accepted.

*Id.* at 123 (footnote omitted). In *Girves v. Kenai Peninsula Borough*, 536 P.2d 1221 (Alaska 1975), we held that enactment by the territorial legislature of a law dedicating a four rod strip along all section lines for roadway purposes was a positive act of acceptance of the section 932 grant. *Id.* at 1225–26.

When acceptance of the section 932 grant occurred by construction of a road by an appropriate public authority, a question remained regarding the width of the right-of-way thereby created. It was held that the width was not confined necessarily to the traveled portion of the roadway, but that "local laws, customs and usages" would control. *City of Butte v. Mikosowitz*, 39 Mont. 350, 102 P. 593, 595–96 (1909); *see also Ball v. Stephens*, 68 Cal.App.2d 843, 158 P.2d 207, 209 (1945).

One purpose of DO 2665 was to define as a matter of local law or usage the width of roadway easements which had been created by the construction of roads and which would be created in the future by the construction of new roads. The memorandum of February 7, 1951, from the chief counsel of the Bureau of Land Management to the Bureau's director [11] makes this clear:

> Notwithstanding that section 2477 of the Revised Statutes (43 U.S.C. § 932) does not fix the width of the rights-of-way granted by it, the width when fixed by a positive act of the proper State or Territorial authorities has been held valid. *Costain v. Turner* (1949) [72 S.D. 427], 36 N.W.2d 382; *Butte v. Mikosowitz* (1909) [39 Mont. 350], 102 P. 593. In both cases, the width fixed included an area in excess of the beaten path or track. The reasons which sustain the conclusion reached in those cases support the conclusion that in the case of public highways in Alaska constructed or maintained under the jurisdiction of the Secretary of the Interior, the width of the highways may be fixed by that official.

The memo goes on to suggest the publication of an order, which was to become DO 2665, in terms which make it clear that the staking requirement only applies to new construction and not to existing roads:

> The following procedure is suggested for the establishment of highway easements of prescribed widths in Alaska:
>
> (1) The issuance of an order by the Secretary of the Interior to be published in the Federal Register fixing the width for existing roads and the width for new construction, including changes in the location of existing roads, and extensions of such roads. *In the case of new construction, the order can only be effective when the survey stakes have been set on the ground.*

(Emphasis added).

Further, the Superior Court's conclusion that the staking requirement applies to ex-

---

10. *See Clark v. Taylor*, 9 Alaska 298, 303 (D.Alaska 1938); *Ball v. Stephens*, 68 Cal. App.2d 843, 158 P.2d 207, 209 (1945); *Moulton v. Irish*, 67 Mont. 504, 218 P. 1053, 1054 (1923).

11. An excerpt from this memorandum is quoted at note 8 *supra*.

isting roads as well as to roads to be constructed in the future is in conflict with our holding in *Green, supra.* The local road in question there was constructed before the promulgation of DO 2665. As to the Green parcel, we held that the 50 foot right-of-way was fixed as of the promulgation of the order. *Green,* 586 P.2d at 604.

For these reasons we conclude that the State's appeal with respect to the adverse judgment on the cross-claim of the Peases is well-founded. The third paragraph of the declaratory judgment is therefore reversed. Since the first paragraph of the judgment includes the situation presented in the Pease case, it too must be reversed.

## II

## THE STATE'S APPEAL AS TO BOYSEN'S PROPERTY

The discussion in this section concerns the plaintiff's eighth claim for relief, which is reflected in the second and third paragraphs of the judgment. This discussion is also relevant to the second claim for relief relating to feeder roads. Because specific facts concerning the Hansen parcel require that it be treated differently, we exclude it from this discussion and focus instead on the Boysen property.

This aspect of the case involves an additional public land order that was not involved in the discussion of the Pease case. This order, PLO 1613, was promulgated April 7, 1958. 23 Fed.Reg. 2376, 2378 (1958). PLO 1613 revoked PLO 601 which, as modified by PLO 757, had withdrawn and reserved for highway purposes 150 feet on each side of the Seward Highway. *Id.* at 2376. PLO 1613 converted the 150 foot Seward Highway right-of-way to an easement of the same width.[12]

The Boysen parcel consists of some 80 acres joining the Seward Highway. The patent was issued to Boysen's predecessor on May 15, 1952, under the Homestead Act. The homestead entry was made January 2, 1951. The patent contains a blanket reservation for road rights-of-way as required by 48 U.S.C. § 321d. *See* page 718 *supra.*

Setting aside the possible effect of the section 321d reservation, the homestead entry of Boysen's predecessor in January 1951 fixes the date from which the property rights of the owners of the parcel are to be measured.[13] As of that date, PLO 601 had withdrawn 100 feet of land from each side of the center line of the Seward Highway. 14 Fed.Reg. 5048 (1949).

The superior court was apparently of the view that unless the State had fully occupied or staked this 100 feet before the effective date of the Right-of-Way Act of 1966, that act eliminated the withdrawal. We disagree.

The Seward Highway was in existence by the time of the homestead entry. The superior court apparently imposed the staking requirement because of section 3 of DO 2665.[14] For the reasons we have expressed with respect to the Peases' property, the superior court's conclusion concerning the applicability of the staking require-

---

**12.** 23 Fed.Reg. 2376, 2377 (1958). PLO 1613 provides in pertinent part:

> 1. Public Land Order No. 601 of August 10, 1949, as modified by Public Land Order 757 of October 16, 1951, reserving for highway purposes the public lands of Alaska lying ... within 150 feet on each side of the center line of the ... Seward-Anchorage Highway ... is hereby revoked.
> ....
> 3. An easement for highway purposes, including appurtenant protective, scenic and service areas, over and across the lands described in paragraph 1 of this order, extending 150 feet on each side of the center line of the highways mentioned therein, is hereby established.

....

> 5. The easements established under paragraphs 3 and 4 of this order shall extend across both surveyed and unsurveyed public lands described in paragraphs 1 and 2 of this order for the specified distance on each side of the center line of the highways ... as those center lines are definitely located as of the date of this order.

*Id.* at 2376–77.

**13.** *See* part III *infra.*

**14.** Subsection (a)(1) of section 1 of DO 2665 recognizes expressly the 150 foot withdrawal for the Seward Highway expressed in PLO 757. *See* note 5 *supra.*

ment to the Seward Highway is erroneous. The Seward Highway was not new construction in 1949, when PLO 601 was promulgated, or in 1951, when DO 2665 was promulgated. It had a fixed location and the boundaries of its right-of-way were ascertainable by referring to the applicable PLO and measuring from its center line.

In addition, the 100 foot right-of-way first created by PLO 601 does not depend for its existence on the reservation placed in the patent under section 321d. PLO 601 was issued pursuant to Executive Order 9337, 8 Fed.Reg. 5516 (1943), under which the President of the United States delegated his authority to the Secretary of the Interior under 43 U.S.C. § 141, ch. 421, § 1, 36 Stat. 847 (1910), *repealed by* Pub.L. No. 94–579, Title VII, § 704(a) (1976), authorizing withdrawal of public lands in Alaska for specified public purposes.[15] As previously noted, the Right-of-Way Act of 1966 applies only to rights-of-way acquired under section 321d reservations.

 For the above reasons the second paragraph of the judgment as it relates to the Boysen property must be reversed. The preceding discussion also requires, as did our discussion in part I concerning the Peases' property, reversal of the first paragraph of the judgment. We do not reach the question whether a full 150 foot easement became fixed across the Boysen property by operation of the section 321d patent reservation and promulgation of PLO 757, and thus may be unaffected by the Right-of-Way Act of 1966. This question was not specifically addressed by the superior court nor is it presented in the briefs before us.

### III

### THE CROSS–APPEAL AS TO THE HANSEN PROPERTY

The patent for the Hansen parcel was issued to Hansen's predecessor-in-interest on June 1, 1950, under the Homestead Act. The homestead entry was made on January 23, 1945, before the promulgation of any of the land orders previously discussed, and before passage of 48 U.S.C. § 321d. The patent to the Hansen property does not contain a section 321d reservation.

The PLO 601 withdrawal was expressly subject to "valid existing rights." 14 Fed. Reg. 5048 (1949). Homestead entries have been held to give rise to valid existing rights,[16] although those rights may not in all cases take priority over intervening government acts.[17] Here, however, there is no doubt of the intention to except prior homestead entries from PLO 601. As we have noted, PLO 601 was promulgated pursuant to 43 U.S.C. § 141. 43 U.S.C. § 142 states that "there shall be excepted from the force and effect of any withdrawal made under the provisions of ... section 141 ... all lands which are, on the date of such withdrawal, embraced in any lawful homestead ... entry ...." Since entry was in 1945, and the first withdrawal occurred in 1949, Hansen's predecessor-in-interest, as an entryman, had rights superior to the withdrawals.

 Section 321d has no effect on the Hansen property. The mandatory reservation required by this statute was limited to "patents for lands *hereafter* taken up, entered, or located in the Territory of Alaska, ..." (emphasis added). Since the Hansen land was entered in 1945, it was not "hereafter" entered and thus was excluded from the operation of that statute. This is consistent with the absence of the section 321d reservation in the Hansen patent, and also consistent with its presence in the patents to the other two parcels of land involved in this appeal where entry occurred after July

---

**15.** The State and the plaintiffs have agreed that PLO 601 is based on Executive Order 9337 which, "in turn, rests on" 43 U.S.C. § 141. We thus have no occasion to consider whether Executive Order 9337 delegated authority to make withdrawals in addition *to those authorized by 43 U.S.C. § 141.*

**16.** *Stockley v. United States,* 260 U.S. 532, 540, 43 S.Ct. 186, 188, 67 L.Ed. 390, 394 (1923); *Korf v. Itten,* 64 Colo. 3, 169 P. 148, 150–51 (1917).

**17.** *Wilbur v. United States ex rel. Stuart,* 53 F.2d 717, 720 (D.C.Cir.1931).

24, 1947, the date on which section 321d was adopted.

Thus, for reasons different from those articulated by the superior court, the second paragraph of the declaratory judgment is affirmed as to the Hansen parcel.

## IV

### TRANSAMERICA'S LIABILITY

■ In count I of the complaint, Transamerica sought a declaration absolving it of liability to the Peases under its title insurance policy. The superior court, following *Hahn v. Alaska Title Guaranty Co.*, 557 P.2d 143 (Alaska 1976), found Transamerica conditionally liable to the Peases for the value of the 17 foot strip arising from DO 2665. In *Hahn* we held that the publication of a public land order, there PLO 601, in the Federal Register imparted constructive notice of the order as to the land it effected. Under the terms of the title policy there involved, the title insurance company was found to be liable. *Id.* at 146. We agree that *Hahn* is squarely controlling.

Transamerica, however, contends that *Hahn* should be overruled. We have considered Transamerica's arguments in support of this position and we are not persuaded that *Hahn* is unsound in any respect. We therefore decline to overrule it. Thus, Transamerica is liable under its policy to the Peases. Paragraph 4 of the declaratory judgment so far as it relates to Transamerica's liability to the Peases is affirmed.

## V

### CROSS-APPEAL AS TO FIFTH, SIXTH, SEVENTH AND NINTH CLAIMS FOR RELIEF

The plaintiffs claim that the superior court should have granted summary judgment in their favor on their fifth, sixth, seventh and ninth claims for relief. The court made no ruling as to these claims. We review them in accordance with the

---

principle that any ground may be urged on appeal to support a judgment even if it was not accepted by the court in rendering judgment. *Moore v. State*, 553 P.2d 8, 21 (Alaska 1976); *Ransom v. Haner*, 362 P.2d 282, 285 (Alaska 1961).

The fifth and sixth claims are similar because to prevail, a property owner [18] must establish status as a "subsequent innocent purchaser . . . in good faith for a valuable consideration" as that term is used in AS 34.15.290. An innocent purchaser must lack "actual or constructive knowledge" of the conflicting deed or encumbrance that the purchaser seeks to avoid. *Sabo v. Horvath*, 559 P.2d 1038, 1043 (Alaska 1976). *Sabo* held that as between two grantees, a pre-patent grantee's deed that was recorded before the patent was issued is a "wild deed" and does not give constructive notice to a post-patent grantee who duly records. *Id.* at 1044.

The question here is whether public land orders, which appear in the Federal Register, impart constructive notice, thus preventing the property owner from claiming innocent purchaser status. We have in part IV of this opinion re-affirmed the holding of *Hahn v. Alaska Title Guarantee Co.*, 557 P.2d 143 (Alaska 1976) that publication of a land order in the Federal Register is constructive notice of the order as that term is used in a title insurance policy. That holding is controlling here.

■ The distinction between *Sabo* and this appeal is that *Sabo* concerns private deeds and this appeal involves a conflict between a government regulation and a patent. Regulations published in the Federal Register take on the character of law. *Farmer v. Philadelphia Electric Co.*, 329 F.2d 3, 7 (3d Cir.1964); *United States v. Messer Oil Corp.*, 391 F.Supp. 557, 561–62 (W.D.Pa.1975). All persons are presumed to know the contents of the law. *See Ferrell v. Baxter*, 484 P.2d 250, 265 (Alaska 1971). In *United States v. Messer Oil Corp.*, the district court indicated that regu-

---

**18.** In this somewhat abstract context the term "property owner" should be considered to be a property owner situated as is the plaintiff Boy-sen, for Hansen has prevailed on other grounds.

lations published in the Federal Register were sufficient notice to allow conviction of a criminal violation. 391 F.Supp. at 562. If Federal Register notice is sufficient for this purpose, it is sufficient notice to a landowner regarding easements that the federal government has reserved across his land. Thus, the publication of the land orders in the Federal Register imparted constructive notice and served to preclude subsequent innocent purchaser status.

In the seventh claim, plaintiffs contend that the State is estopped from claiming any easements under the orders here involved. The State responds that constructive notice defeats the estoppel claim.

■ Estoppel requires "the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice." *Jamison v. Consolidated Utilities, Inc.,* 576 P.2d 97, 102 (Alaska 1978) (footnote omitted). Plaintiffs claim that the State has asserted by conduct that it claims no easements by allowing the owners to develop their property inconsistently with the easements, and by not recording the land orders. They assert that reasonable reliance on that assertion has taken place. Because we have already found that publication of the land orders imparts constructive notice of the easements which they create, that notice makes plaintiffs' reliance unreasonable. Thus, the estoppel claim lacks merit.

The ninth claim of plaintiffs is based on the fact that the property owners' patents involved here did not expressly refer to any land order easements. Because of this the plaintiffs contend that the property conveyed was conveyed free from such easements. They argue further that as a result suit was required to be brought against the property owners to vacate the patents, and that the time for such a suit is, in all cases

now before us, barred by the six year statute of limitations contained in 43 U.S.C. § 1166.[19]

The premise of this argument is that a patent which does not say that it is issued subject to a public easement operates to transfer the property free from the easement. We rejected this premise in *Green.* We held there that an unexpressed DO 2665 easement was effective. *Green,* 586 P.2d at 603.

Similarly, in *Girves v. Kenai Peninsula Borough,* 536 P.2d 1221 (Alaska 1975), we affirmed a trial court ruling that a right-of-way not expressed in a patent was effective:

At the outset Girves notes that neither her "Notice of Allowance", nor her patent contained any express reservation of rights-of-way in favor of any public body. However, the absence of an express reservation of easement does not preclude the borough from showing that a right-of-way was established prior to the issuance of these documents.

*Id.* at 1224 (footnote omitted). We cited as authority for that statement *State v. Crawford,* 7 Ariz.App. 551, 441 P.2d 586 (1968). That case aptly states:

[I]t is also clear from cases decided under 43 U.S.C. § 932 that a subsequent patentee takes subject to previous right-of-ways [sic] established under the grant contained in that federal statute [Citations omitted.] No contrary authority has come to our attention.... The silence of the patents does not preclude the State from showing the full extent of its right-of-way established prior to the time when the patents were issued to plaintiff's predecessors.

*Id.* at 590.

■ The above and other authorities[20] establish that, by operation of law,

**19.** 43 U.S.C. § 1166 provides:
 Suits by the United States to vacate and annul any patent shall only be brought within six years after the date of the issuance of such patents.

**20.** *Bird Bear v. McLean County,* 513 F.2d 190, 192–93 (8th Cir.1975); *Ball v. Stephens,* 68

Cal.App.2d 843, 158 P.2d 207, 210 (1945); *Nicolas v. Grassle,* 83 Colo. 536, 267 P. 196, 197 (1928); *Flint & P.M. Ry. v. Gordon,* 41 Mich. 420, 2 N.W. 648, 655 (1879); *Lovelace v. Hightower,* 50 N.M. 50, 168 P.2d 864, 874 (1946); *Verdier v. Port Royal R.R.,* 15 S.C. 476, 481 (1881); *Costain v. Turner County,* 72 S.D. 427,

land conveyed by the United States is taken subject to previously established rights-of-way where the instrument of conveyance is silent as to the existence of such rights-of-way. No suit to vacate or annul a patent in order to establish a previously existing right-of-way is necessary because the patent contains an implied-by-law condition that it is subject to such a right-of-way.[21] Thus the statute of limitations expressed by 43 U.S.C. § 1166 does not apply.

## VI

## CONCLUSION

The first paragraph of the judgment is REVERSED. The second paragraph of the judgment is AFFIRMED as to Hansen and REVERSED as to Boysen. The third paragraph of the judgment is REVERSED. The fourth paragraph of the judgment is AFFIRMED as to the Peases' claim against Transamerica. The case is REMANDED for further proceedings consistent with the foregoing.

RABINOWITZ, Chief Justice, dissenting in part.

I find that I am unable to agree with the court's conclusion that the State of Alaska or the Municipality of Anchorage is entitled to claim highway easements in excess of those reserved when the parcels in question were conveyed by patent from the federal government. Before discussing the grounds for my disagreement with the court's ruling, however, I believe that it will be useful to set forth what I consider to be the significant facts.

The principal question in this appeal is whether the state[1] must compensate three landowners for portions of their parcels taken to widen existing roads. The landowners—Theodore and Claire Pease, Richard Boysen, and a limited partnership called Hansen Associates—are the successors in interest to persons who originally acquired the parcels by patent from the federal government. The federal government expressly reserved highway easements or rights-of-way in the Pease and Boysen patents; there were no easements or rights-of-way reserved in the Hansen patent. In each case the state claims a highway easement greater than that reserved in the patent, resting its claims on various now-repealed federal directives which provided arguably that the easements claimed by the state should have been expressly reserved when the parcels were conveyed by patent.[2]

36 N.W.2d 382, 383 (1949); *Wells v. Pennington County,* 2 S.D. 1, 48 N.W. 305, 308 (1891); *Sullivan v. Condas,* 76 Utah 585, 290 P. 954, 957 (1930).

21. Indeed, when the Secretary of the Interior declared these rights-of-way, they vested in the public and there is authority that thereafter the Secretary could not revoke them. In *Walcott Township v. Skauge,* 6 N.D. 382, 71 N.W. 544 (1897), the court, in discussing 43 U.S.C. § 932, stated:

Highways once established over the public domain under and by virtue of this act, the public at once became vested with an absolute right to the use thereof, *which could not be revoked by the general government,* and whoever thereafter took the title from the general government took it burdened with the highway so established.

*Id.* at 546 (emphasis added); *accord Bird Bear v. McLean County,* 513 F.2d 190, 192 (8th Cir. 1975); *Wenberg v. Gibbs Township,* 31 N.D. 46, 153 N.W. 440, 441 (1915); *Gustafson v. Gem Township,* 58 S.D. 308, 235 N.W. 712, 713 (1913). *Cf. City of Butte v. Mikosowitz,* 39 Mont. 350, 102 P. 593, 596 (1909) (grant of a roadway under 43 U.S.C. § 932 is to the public, and governmental entities have "supervision and control thereof as trustee for the public, ...."). That the rights-of-way were established by administrative action rather than public user does not put them on a different footing. *See United States v. Rogge,* 10 Alaska 130, 152–53 (D.Alaska 1941), *aff'd* 128 F.2d 800 (9th Cir.1942).

1. Although the right of the Municipality of Anchorage to claim undisclosed easements is also at issue, I will refer only to the state's rights, for convenience's sake, as the legal issues are the same as to both the state and the municipality.

2. The Pease patent reserved a right-of-way of unspecified location and width under the authority of 48 U.S.C. § 321d, and also reserved a separate 33-foot right-of-way along the south and east boundaries of the parcel. The Peases concede that the state is entitled to the 33-foot right-of-way, and the Alaska Right-of-Way Act of 1966, ch. 92, 1966 Temporary and Special Acts and Resolutions, requires the state to

In my view, the state's reliance upon undisclosed easements, decades after the lands were patented,[3] is foreclosed by both federal and state statutes of limitations governing suits to set aside patents.[4] In addition, I think the landowners are entitled to the protection of Alaska's recording act.[5] Thus, I do not agree with the court's ruling that the state need not compensate the landowners for taking easements which were not expressly reserved in the patents.[6]

In my view, the dispositive legal issue in this appeal should be framed as follows: if the federal government mistakenly issues a patent which purports to convey clear title to lands which should have been withheld for highway easements, is there a time after which the patent may not be challenged notwithstanding the mistake? Because Congress has supplied the answer to this dispositive question in the form of a statute of limitations applicable to suits challenging the validity of patents, I think it is unnecessary to address the array of statutes, Public Land Orders, and Departmental Orders marshalled by the state in defense of the easements that it claims.

Forty-three U.S.C. § 1166 provides that "[s]uits by the United States to vacate and annul any patent shall only be brought within six years after the date of the issuance of such patents."[7] This statute of

---

compensate the Peases if it uses a section 321d right-of-way notwithstanding the fact that the right-of-way was expressly reserved in the patent. In addition, section 138(b) of the Federal Aid Highway Act of 1970 provides an independent basis for concluding that the state may not claim a section 321d easement. That provision states:

Any right-of-way for roads, roadways, highways, tramways, trails, bridges, and appurtenant structures reserved by section 321(d) [sic] of title 48, United States Code (61 Stat. 418, 1947), not utilized by the United States or by the State or territory of Alaska prior to the date of enactment hereof, shall be and hereby is vacated and relinquished by the United States to the end and intent that such reservation shall merge with the fee and be forever extinguished.

Pub.L. No. 91–605, § 138(b), 1970 U.S.Code Cong. & Ad.News 2001, 2029 (uncodified). The state, however, claims yet another easement of fifty feet on the Pease parcel, which is seventeen feet greater than the easement to which the Peases agree the state is entitled. The state claims this fifty-foot easement pursuant to Public Land Orders 601 and 757 and Department Order 2665.

The Boysen patent reserved only a section 321d right-of-way; once again, the state must compensate Boysen if it uses a section 321d right-of-way. The state, however, claims a separate 150-foot easement on the Boysen parcel under the authority of Public Land Order 1613 and Department Order 2665.

As to the Hansen parcel, which is subject to no reserved highway easements or rights-of-way, the state also claims a 150-foot easement under the authority of Public Land Order 1613 and Department Order 2665.

3. The Hansen patent was issued on June 1, 1950; the Boysen patent, on May 15, 1952; the Pease patent, on October 4, 1955. The state

---

did not claim the easements that it now seeks until the mid to late 1970's.

4. 43 U.S.C. § 1166; AS 09.10.230. I do not find it necessary to distinguish or consider the many Alaska cases dealing with the effect of various federal directives, because none of those cases have addressed the statutes of limitations issues.

5. AS 34.15.290.

6. The only federal directive upon which the state relies which was in effect when the Hansen parcel was patented is Public Land Order 601; the remaining directives were not promulgated until after the Hansen patent was issued and cannot, in my view, be applied to alter vested property interests without abridging rights secured by the federal and state constitutions. The withdrawals made by Public Land Order 601 were, however, subject to "valid existing rights," and an entryman's claim is a "valid existing right" which could not be adversely affected by Public Land Order 601. Since the Hansen parcel was entered prior to the promulgation of Public Land Order 601, that parcel is not subject to the withdrawal made by that directive.

7. Admittedly the United States is not a party to this litigation, but this observation does not answer the question of the applicability of the federal statute of limitations. The state, which acquired its interests in federally-created highway easements from the federal government by quitclaim deed, could not have acquired greater rights than its grantor had; the state's rights are merely derivative. A claim that would have been time-barred as to the United States was not revived, nor did the federal statute of limitations cease to run as to viable claims, when the United States transferred its rights to

limitations was enacted because of "the insecurity and loss of confidence of the public in the integrity and value of patent title to public lands, which had been occasioned by conflicting claims ... which had resulted in many suits being commenced to cancel patents." *United States v. Whited & Wheless, Ltd.,* 246 U.S. 552, 562, 38 S.Ct. 367, 368, 62 L.Ed. 879, 882 (1918). The statute presupposes that the federal government might err and issue a patent to previously reserved lands. As the Supreme Court has explained, "[i]f the act were confined to valid patents it would be almost or quite without use." *United States v. Chandler-Dunbar Water Power Co.,* 209 U.S. 447, 450,

28 S.Ct. 579, 580, 52 L.Ed. 881, 887 (1908). The well-settled rule is that the running of the statute of limitations "makes the title of the patentee good as against the grantor, the United States." *United States v. Eaton Shale Co.,* 433 F.Supp. 1256, 1269 (D.Colo. 1977). If the landowners' patent titles are good as against the original grantor, the United States, then their titles are good as against the state, which acquired its interests, if any, in the patented lands in 1959 by quitclaim deed from the federal government. In my view the effect of the six-year statute of limitations is to validate a mistakenly issued patent after the limitations period has expired.[8] Thus, I would

the state. Stated differently, a time-barred claim is not revived by assigning it to someone to whom the relevant statute of limitations is not applicable. *See, e.g., Stanczyk v. Keefe,* 384 F.2d 707, 708 (7th Cir.1967) (parents could not revive time-barred claim by assigning it to minor child, against whom statute of limitations did not run); *Smith v. Copiah County,* 232 Miss. 838, 100 So.2d 614, 616 (1958) (assignee's claim is barred if assignor's rights are barred).

Inherent in my conclusion that 43 U.S.C. § 1166 is applicable is the view that a judicial ruling which declares that a portion of the landowners' patented parcels must be conveyed without compensation to the state, in derogation of the patents themselves, is the functional equivalent of a ruling that portions of the patents be "vacated" or "annulled."

**8.** *See United States v. Winona & St. Peter R.R. Co.,* 165 U.S. 463, 17 S.Ct. 368, 41 L.Ed. 789 (1897); *United States v. Chandler-Dunbar Water Power Co.,* 209 U.S. 447, 28 S.Ct. 579, 52 L.Ed. 881 (1908). In *Winona* the Court explained:

Congress evidently recognized the fact that notwithstanding any error in certification or patent there might be rights which equitably deserved protection, and that it would not be fitting for the government to insist upon the letter of the law in disregard of such equitable rights. In the first place, it has distinctly recognized the fact that when there are no adverse individual rights, and only the claims of the government and of the present holder of the title to be considered, it is fitting that a time should come when no mere errors or irregularities on the part of the officers of the land department should be open for consideration. In other words, it has recognized that, as against itself in respect to these land transactions, it is right that there should be a statute of limitations; that when its proper officers, acting in the ordinary course of their

duties, have conveyed away lands which belonged to the government, *such conveyances should, after the lapse of a prescribed time, be conclusive against the government, and this notwithstanding any errors, irregularities, or improper action of its officers therein.* 165 U.S. at 475–76, 17 S.Ct. at 370–71, 41 L.Ed. at 795 (emphasis added).

Indeed, so strong is the federal policy of ensuring that federal patents convey unassailable title that the validity of even fraudulently-procured patents may not be challenged after the six-year statute of limitations has run. *See, e.g., United States v. Whited & Wheless, Ltd.,* 246 U.S. 552, 38 S.Ct. 367, 62 L.Ed. 879 (1918). A patentee who procures a patent by fraud has good title after the six-year period has expired, although the statute of limitations does not begin to run until the fraud is discovered. *Exploration Co. v. United States,* 247 U.S. 435, 38 S.Ct. 571, 62 L.Ed. 1200 (1918).

In addition, the federal bona fide purchaser doctrine provides that the validity of an erroneously granted patent may not be challenged once the original patentee conveys the parcel to a bona fide purchaser. *See, e.g., United States v. California & Oregon Land Co.,* 148 U.S. 31, 40–41, 13 S.Ct. 458, 461–462, 37 L.Ed. 354, 359–60 (1893); *Colorado Coal & Iron Co. v. United States,* 123 U.S. 307, 313, 8 S.Ct. 131, 133, 31 L.Ed. 182, 185 (1887). Bona fide purchase from a patentee is a perfect defense to a suit to set aside a patent. *See, e.g., Wright-Blodgett Co. v. United States,* 236 U.S. 397, 35 S.Ct. 339, 59 L.Ed. 637 (1915), which involved a patent obtained by fraud:

[T]he respect due a patent, the presumption that all the preceding steps required·by the law had been observed before its issue, and the immense importance of stability of titles dependent upon these instruments, demand that suit to cancel them should be sustained only by proof which produces conviction.... And, *despite satisfactory proof of fraud in*

hold that the federal statute of limitations, 43 U.S.C. § 1166, bars the state's claim to undisclosed easements.[9]

As an independent basis for ruling that the landowners' parcels are free of the easements claimed by the state, I would hold further that the state's claims are barred by AS 09.10.230, which provides in pertinent part:

> No person may bring an action to set aside, cancel, annul, or otherwise affect a patent to lands issued by this state or the United States, or to compel a person claiming or holding under a patent to convey the lands described in the patent or a portion of them to the plaintiff in the action, or to hold the lands in trust

for or to the use and benefit of the plaintiff, or on account of any matter, thing, or transaction which was had, done, suffered, or transpired before the date of the patent unless commenced within 10 years from the date of the patent.[10]

This statute, which clearly evinces the legislature's intent that patents be considered conclusive evidence of the title they purport to convey after ten years from the date of issuance, has been the law of the territory and State of Alaska for the better part of a century. In my view it is appropriate to give effect to this long-standing state policy of promoting public confidence in the stability and marketability of patent titles.[11]

---

> *obtaining the patent, as the legal title has passed, bona fide purchase for value is a perfect defense.*
> *Id.* at 403, 35 S.Ct. at 341, 59 L.Ed. at 640 (citations omitted) (emphasis added).

**9.** I find the authorities relied upon by the court, *see ante* n. 19, inapposite for two reasons. First, those authorities simply do not address the statute of limitations issue.

Second, many of those authorities involve situations in which, at the time the patent in question was issued, the patented lands had previously been conveyed to or reserved for some third party, such as a railroad or a state. In such situations courts have sometimes concluded that the prepatent interests prevailed over the patentees' claims. In the case at hand, however, the state is not claiming, and cannot claim, that it acquired the easements or rights-of-way prior to the issuance of the patents in question and that the patents were therefore issued in derogation of the state's rights. The claim is not that the federal government had conveyed away parts of the patented parcels to anyone prior to issuing the patents; rather, the gist of the claim is that the federal government mistakenly conveyed by patent, lands that it intended to keep for itself.

In *Cramer v. United States,* 261 U.S. 219, 67 L.Ed. 622, 43 S.Ct. 342, (1923), the Court made precisely this distinction. *Cramer* involved a suit brought by the United States to set aside a patent granted to a railroad covering lands occupied by Indians. The Court distinguished between suits brought by the government to cancel patents and revest title in itself and suits brought so that the parcels could be vested in third parties whose rights had accrued prior to patent. The Court noted that the six-year statute of limitations applies to the former kind of case, but not to the latter:

> The suit is not barred by [now 43 U.S.C. § 1166], limiting the time within which suits

may be brought by the United States to annul patents.

> The object of that statute is to extinguish any right the *government* may have in the land which is the subject of the patent, not to foreclose claims of third parties. Here the purpose of the annulment was not to establish the right of the United States to the lands, but to remove a cloud upon the possessory rights of its wards. As stated by this court in *United States v. Winona & St. Peter R.R. Co.,* 165 U.S. 463, 475 [17 S.Ct. 368, 370], 41 L.Ed. 789, 795, ... the statute was passed in recognition of "the fact that when there are no adverse individual rights, and only the claims of the government and of the present holder of the title to be considered, it is fitting that a time should come when no mere errors or irregularities on the part of the officers of the Land Department should be open for consideration." After the lapse of the statutory period, the patent becomes conclusive against the government, but not as against claims and rights of others ....
> *Id.* at 233–34, 43 S.Ct. at 346, 67 L.Ed. at 628 (emphasis in original). *See also United States v. Krause,* 92 F.Supp. 756, 766 (W.D.La.1950); *Capron v. Van Horn,* 258 P. 77 (Cal.1927).

**10.** *See Monroe v. California Yearly Meeting of Friends Church,* 564 F.2d 304, 306 n. 2 (9th Cir.1977).

**11.** Although the question of the applicability of AS 09.10.230 was not raised below, we have repeatedly stated that "[u]pon appeal, a correct decision of the superior court will be affirmed regardless of whether we agree with the reasons advanced." *Fireman's Fund Am. Ins. Cos. v. Gomes,* 544 P.2d 1013, 1017 n. 12 (Alaska 1978); *Carlson v. State,* 598 P.2d 969, 973 (Alaska 1979); *A & G Constr. Co. v. Reid Bros. Logging Co.,* 547 P.2d 1207, 1211 n. 1 (Alaska 1976).

Finally, I do not agree with the court's holding that Boysen and the Peases are charged with constructive notice of federal directives published in the Federal Register and thus are unable to claim bona fide purchaser status under Alaska's recording act, AS 34.15.290.

Forty-four U.S.C. § 1507 provides that persons are charged with notice of documents filed for publication in the Federal Register "except in cases where notice by publication is insufficient in law." Thus, the pertinent question is whether published notice of federal directives such as Public Land Orders is "insufficient in law" to bind Boysen and the Peases, who did not have actual knowledge of the published directives when they purchased their parcels.[12]

The answer to this question is supplied by federal law,[13] and, as the court notes, there are a number of situations in which notice in the Federal Register is sufficient to bind persons who did not know of the publication. In my view, however, this appeal involves a situation in which notice by publication is "insufficient in law" within the meaning of 44 U.S.C. § 1507.

Our task is to determine whether Congress intended that the sufficiency of published notice of federal directives affecting Alaska real property is to be tested by looking to state law[14] or by applying an independent body of federal common law

designed to supplant the state's conveyancing rules.[15] Congress did not address this question when enacting the predecessor to 44 U.S.C. § 1507, but, in my view, had it done so it would not have concluded that lands whose private title began with a patent from the federal government should be subject to different conveyancing standards than neighboring parcels whose title originated elsewhere. I find it difficult to believe that that Congress could have intended to displace established conveyancing law in every state in the union and create a chaotic system in which each state is required to apply different standards to patented parcels than to parcels whose chain of title did not begin with a federal patent. In short, I think that the sufficiency of notice for purposes of 44 U.S.C. § 1507 should be determined by applying state law standards. Since the law of this state does not charge a grantee with notice of prepatent transactions and documents[16] or of instruments not recorded in the chain of title,[17] I would conclude that Boysen and the Peases did not have constructive notice of the easements claimed by the state and thus are protected by AS 34.15.290.

---

**12.** Under AS 34.15.290 Boysen and the Peases must prevail as bona fide purchasers unless they are charged with constructive notice of the existence of easements which were not recorded in their chains of title.

Our ruling in *Hahn v. Alaska Title Guaranty Co.,* 557 P.2d 143 (Alaska 1976) does not dispose of this issue because the parties in *Hahn* did not argue, and we did not consider, whether a notice published in the Federal Register might be "insufficient in law."

**13.** *See, e.g., Ritter v. Morton,* 513 F.2d 942, 946 (9th Cir.1975) (per curiam), *cert. denied,* 423 U.S. 947, 96 S.Ct. 362, 46 L.Ed.2d 281 (1975); *United States v. Boyd,* 458 F.2d 1252, 1254 (6th Cir.1972).

**14.** *See, e.g., Reconstruction Finance Corp. v. Beaver County,* 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946). Congress is, of course, free to adopt state rules as federal law. *See generally* P. Bator, P. Mishkin, D. Shapiro, & H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 470–71, 491–94 (2d ed. 1973). The classic example of such an incorporation of states' legal doctrine into federal law is the Federal Tort Claims Act, under which the liability of the United States—a federal question—is determined by applying state substantive law. *See* 28 U.S.C. § 2674; *see also, e.g., Otteson v. United States,* 622 F.2d 516 (10th Cir.1980).

**15.** *See, e.g., Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

**16.** *See File v. State,* 593 P.2d 268, 270 (Alaska 1979) ("patent is the highest evidence of title").

**17.** *See Sabo v. Horvath,* 559 P.2d 1038 (Alaska 1976).